UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                              CRIMINAL ACTION

VERSUS                                                                          No. 17-201

CHUKWUDI OFOMATA                                                        SECTION I

### ORDER & REASONS

Before the Court is defendant Chukwudi Ofomata's ("Ofomata") motion[1] to strike the government's notice of intent to seek the death penalty. Ofomata argues that the Federal Death Penalty Act (the "FDPA") unconstitutionally violates the Tenth Amendment's anticommandeering principle. For the following reasons, the motion is denied.

### I.

On August 31, 2018, the government filed its notice of intent to seek the death penalty as to Ofomata.[2] Under the FDPA, 18 U.S.C. §§ 3591–3598, "conviction of an offense punishable by death is followed by a separate sentencing hearing which involves both an eligibility and selection phase." *United States v. Ebron*, 683 F.3d 105, 149 (5th Cir. 2012). If a death sentence is imposed, the FDPA provides for its implementation and the use of state facilities for execution:

> A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence.

---

[1] R. Doc. No. 185.
[2] *See generally* R. Doc. No. 149.

> When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of the United States marshal, who shall supervise the implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.

18 U.S.C. § 3596(a).

> A United States marshal charged with supervising the implementation of a sentence of death may use appropriate State or local facilities for the purpose, may use the services of an appropriate State or local official or of a person such an official employs for the purpose, and shall pay the costs thereof in an amount approved by the Attorney General.

18 U.S.C. § 3597(a).

Ofomata argues that the FDPA requires that state officials and state facilities be enlisted to carry out federal executions and, consequently, the FDPA violates the anticommandeering principle of the Tenth Amendment.

## II.

The Court must first address the government's contention that Ofomata's motion is not ripe for review.[3] "The ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . A court should dismiss a case for lack of ripeness

---

[3] R. Doc. No. 222, at 1–5.

2

when the case is abstract or hypothetical." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (internal quotations omitted).

> It is true that constitutional challenges by defendants to a particular punishment "are *generally* not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine." *Cheffer v. Reno.* 55 F.3d 1517, 1523 (8th Cir. 1995) (emphasis added). But, in addressing any and all ripeness challenges, courts are required to make a fact-specific determination as to whether a particular challenge is ripe by deciding whether (1) the issues are fit for judicial consideration, and (2) withholding of consideration will cause substantial hardship to the parties. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967).

*United States v. Quinones*, 313 F.3d 49, 58 (2d Cir. 2002). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Choice Inc. of Tex*, 691 F.3d at 715 (quoting *New Orleans Pub. Serv. Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987).

Ofomata is urging a purely legal question, as resolution of this motion does not require the development of any specific facts. The government does not dispute this. Rather, the government asserts that Ofomata's arguments are rooted in speculation and rely on an uncertain future event—a sentence of death.[4]

Ofomata also asserts that he will suffer hardship if the Court refuses consideration of his motion to strike the government's notice of intent to seek the death penalty at this stage of the litigation. To demonstrate this alleged hardship,

---

[4] R. Doc. No. 222, at 3.

3

Ofomata relies on the decision in *United States v. Quinones*, 313 F.3d 49 (2d Cir. 2002). In *Quinones*, the defendants filed a pretrial motion to strike the government's notice of intent to seek the death penalty, arguing that the FDPA was facially unconstitutional pursuant to the Fifth Amendment's Due Process Clause. *Id.* at 52. The district court held, and the Second Circuit agreed, that the defendants' motion was ripe for review because (1) it posed a purely legal question and (2) the defendants demonstrated the hardship they would suffer if the court withheld consideration of the motion. *Id.* at 59.

As to the finding of hardship, the Second Circuit explained that "a defendant suffers practical and legally-cognizable disadvantages by postponing a facial challenge to the death penalty until after trial." *Id.* Specifically, the Second Circuit explained:

> Quite apart from a defendant's obvious desire to know in advance whether he will be risking his life by going to trial, the District Court determined that a defendant may reasonably prefer the ordinary allocation of peremptory challenges—six for the government, six for the defense—rather than the allocation in a capital case of twenty for each side. We also agree with the District Court that a defendant may reasonably prefer a jury on which persons who are conscientiously opposed to the death penalty are not excused for cause.
>
> Further, if the death penalty remains a possibility during trial, a defendant may be forced into trial tactics that are designed to avoid the death penalty but that have the consequence of making conviction more likely. Moreover, the possibility of capital punishment frequently induces defendants to enter into plea agreements in order to guarantee their own survival. . . . [T]o the extent that a defendant might be disposed to plead guilty before trial in order to avoid capital punishment, withholding

4

> consideration of a facial challenge to the death penalty until after trial, conviction and sentence could cause him substantial hardship. . . .
>
> Although in this case the defendants challenge the constitutionality of their potential sentences rather than their potential convictions, this distinction is rendered irrelevant by the fact that the requirements of the FDPA necessarily affect the entire trial process, not merely the sentencing stage of the proceedings.

*Id.* at 59–60.

Ofomata argues that he would suffer substantial hardship if he was forced to prepare and defend a capital murder trial without knowing whether a sentence of death remained a possibility. However, the concerns articulated in *Quinones*, and urged by Ofomata, are only applicable if a successful challenge to §§ 3596 and 3597 would allow Ofomata to avoid a capital trial.

To that point, the government argues that, because Ofomata is not urging a facial challenge to the FDPA, *Quinones* is inapposite. The government asserts that Ofomata's argument is not ripe because striking §§ 3596 and 3597 would not require striking the entire FDPA and, therefore, Ofomata cannot demonstrate the hardship faced by the defendants in *Quinones*.[5] Specifically, the government asserts that the death penalty will remain "generally constitutional" and its implementation "possible, if only under subsequent legislation."[6] Consequently, the government

---

[5] R. Doc. No. 222, at 3.
[6] *Id.* at 4.

5

argues that Ofomata potentially faces the death penalty regardless of how it is implemented.[7]

Ofomata insists that the Court cannot address the severability of §§ 3596 and 3597 before it addresses the issue of ripeness,[8] yet Ofomata's argument as to hardship is only applicable if the Court's disposition of his motion could invalidate the entire FDPA such that he would not face a death sentence. This circular argument makes clear that the Court's decision as to the severability of §§ 3596 and 3597 is integral to its decision regarding ripeness. *See Ala. Power Co. v. U.S. Dep't of Energy*, 307 F.3d 1300, 1306–11, 1316 n.13 (11th Cir. 2002) (addressing severability before ripeness because the court "would have had to reach the question in any event because it was an integral part of standing and ripeness issues") (citing *I.N.S. v. Chadna*, 462 U.S. 919, 931–44 (1983) (addressing severability before standing and jurisdiction)). The Court must, therefore, determine whether §§ 3596 and 3597 are severable from the FDPA in order to determine whether Ofomata's motion is ripe for review.

> [A] court should refrain from invalidating more of the statute than is necessary. . . . [W]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid.

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) (internal quotations omitted).

> The standard for determining the severability of an unconstitutional provision is well established: Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of

---

[7] *Id.*
[8] R. Doc. No. 270, at 2–5.

> that which is not, the invalid part may be dropped if what is left is fully operative as law.

*New York v. United States*, 505 U.S. 144, 186 (1992) (quoting *Alaska Airlines*, 480 U.S. at 684). When a law "contains no statement of whether its provisions are severable, '[i]n the absence of a severability clause, . . . Congress' silence is just that—silence—and does not raise the presumption against severability." *Id.* (quoting *Alaska Airlines*, 480 U.S. at 686).

First, Ofomata argues that Congress's legislative intent shows that it considered and rejected a fully federalized scheme for imposing and implementing the death penalty when it adopted §§ 3596 and 3597 over the Attorney General's recommendation for federalizing the execution process.[9] However, even if Congress rejected a fully federalized death penalty scheme by enacting §§ 3596 and 3597, this does not demonstrate that Congress would not have enacted the rest of the FDPA without these provisions. *See Alaska Airlines*, 480 U.S. at 685 ("[T]he unconstitutional provision must be severed unless the statute created in its absence is legislation that Congress would not have enacted.").

Furthermore, the FDPA is fully operative as law without §§ 3596 and 3597. Ofomata argues that, "when a method of controlling states violates the Tenth Amendment, and other provisions of an act are entirely linked to that method of control, the entire act must be invalidated."[10] However, even if the Court were to find that §§ 3596 and 3697 provide for a method of controlling the states in violation of

---

[9] R. Doc. No. 185-1, at 10–12, 20.
[10] R. Doc. No. 270, at 8 (citing *Hill v. Wallace*, 259 U.S. 44 (1922)).

7

the Tenth Amendment, those provisions are not entirely linked or "so interwoven with [the FDPA] that they cannot be separated." *Hill v. Wallace*, 259 U.S. 44, 70 (1922).

"According to [the FDPA's] terms, a defendant found guilty of an underlying offense 'shall be sentenced to death if, after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified.'" *United States v. Gabion*, 719 F.3d 511, 546 (6th Cir. 2013) (citing 18 U.S.C. § 3591). "Upon a recommendation under section 3593(e) that the defendant should be sentenced to death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly." 18 U.S.C. § 3594. Section 3595 provides the procedures by which a defendant can appeal a death sentence, and it directs the courts of appeals to specifically review the findings under §§ 3592 and 3593. 18 U.S.C. § 3595. In sum, §§ 3591–3595 provide a statutory mechanism for determining, imposing, and reviewing the death penalty for certain federal offenses.

On the other hand, §§ 3596 and 3597 provide solely for the implementation of the death penalty. These provisions make no reference to the other provisions of the FDPA. Without §§ 3596 and 3597, the FDPA would continue to provide fully operable procedures under which courts could conduct capital trials.[11]

---

[11] Ofomata argues that if the Court were to find §§ 3596 and 3587 severable from the FDPA, Ofomata could be sentenced to death but there would be "no legal mechanism for carrying out the death sentence and no guarantee that one will ever exist." R. Doc. No. 270, at 6. However, the Court notes that the Department of Justice has created procedures by which a federally imposed death sentence could be implemented.

8

Having determined that §§ 3596 and §§ 3597 are severable from the other provisions of the FDPA, the Court finds that Ofomata's motion is not ripe for review.

### III.

For the forgoing reasons,

**IT IS ORDERED** that the motion to strike the government's notice of intent to seek the death penalty is not ripe for adjudication and it is, therefore, **DENIED**.

New Orleans, Louisiana, March 28, 2019.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

Implementation of Death Sentences in Federal Cases, 28 C.F.R. §§ 26.1–26.4.[11] Furthermore, despite Ofomata's argument that Congress has rejected a completely federalized scheme for carrying out executions, there is nothing to suggest that, in doing so, Congress "expressly reserved that power to itself, nor that it has expressly forbidden exercise of the power by the Attorney General." *United States v. Tipton*, 90 F.3d 861, 903 (4th Cir. 1996).