UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 17-201** |
| **LILBEAR GEORGE,**<br>**CHUKWUDI OFOMATA,**<br>**& CURTIS JOHNSON, JR.** | **SECTION I** |

## ORDER & REASONS

Before the Court is a motion[1] by defendants Lilbear George ("George"), Chukwudi Ofomata ("Ofomata"), and Curtis Johnson, Jr. ("Johnson") (collectively, the "defendants") to review the order[2] by the United States Magistrate Judge with respect to the defendants' motions[3] to compel the production of exculpatory information and materials and the joint motion[4] to compel discovery.

The Magistrate Judge held oral hearings on the motions on May 29, 2019 and July 3, 2019.[5] After reviewing the record, the parties' arguments at the hearings, and the relevant case law, the Magistrate Judge issued an order denying in part and granting in part the defendants' motions to compel the production of exculpatory information and materials, denying "at this time" the joint motion to compel discovery, and recommending that George's motion to strike the non-statutory

---

[1] R. Doc. No. 535. The government informed the Court that it did not intend to file a response to the defendants' motion. *See* R. Doc. No. 591.
[2] R. Doc. No. 462.
[3] R. Doc. Nos. 335, 337, & 372.
[4] R. Doc. No. 361.
[5] *See* R. Doc. Nos. 373 & 414.

1

aggravator in the notice of intent be denied.[6] The defendants have not raised any objections to the Magistrate Judge's recommendation to deny George's third motion[7] to strike the non-statutory aggravator "Other Criminal Conduct – Armed Robbery" from the government's notice of intent to seek the death penalty against George.

For the following reasons, the motion is denied.

## I. LAW AND ANALYSIS

### A. Review of a Magistrate Judge's Order

A United States Magistrate Judge may hear and determine "any matter that does not dispose of a charge or defense." Fed. R. Crim. P. 59(a); *see* 28 U.S.C. § 636(b)(1)(a). If a party timely objects to a ruling by a Magistrate Judge on a non-dispositive matter, the United States District Court must modify or set aside any part of the ruling that is "contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). Under this deferential standard, the Court must affirm the decision by the Magistrate Judge "unless 'on the entire evidence [the Court] is left with a definite and firm conviction that a mistake has been committed.'" *Yelton v. PHI, Inc.*, 284 F.R.D. 374, 376 (E.D. La. 2012) (Barbier, J.) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### B. *Brady* Disclosure Obligations

"Under *Brady* and its progeny, due process requires that the prosecution disclose evidence that is both favorable to the defendant and material to guilt or

---

[6] *See* R. Doc. No. 462, at 13.
[7] R. Doc. No. 333.

punishment." *Floyd v. Vannoy*, 894 F.3d 143, 161–62 (5th Cir.), *cert. denied*, 139 S. Ct. 573 (2018) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The government's *Brady* obligation, which applies regardless of the good faith or bad faith of the prosecution, "extends to impeachment evidence as well as exculpatory evidence." *United States v. Swenson*, 894 F.3d 677, 683 (5th. Cir. 2018) (citing *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006)). The duty to disclose "exists irrespective of a request from the defense" and applies to "all evidence known not just to the prosecutors, but 'to others acting on the government's behalf in the case, including the police.'" *Floyd*, 894 F.3d at 161–62 (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). "In order to comply with *Brady*, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf.'" *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (quoting *Kyles*, 514 U.S. at 437). However, "*Brady* does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence." *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (citing *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997)).

### i. *The Defendants' Evidentiary Requests Under* Brady

George, Johnson, and Ofomata each filed motions to compel the production of "exculpatory information and materials" that they had requested from the government.[8] In their motions to compel, the defendants argued that the government had failed to satisfy their requests for favorable evidence subject to disclosure under

---

[8] *See* R. Doc. No. 535-1, at 3.

*Brady*.[9] The government's response to these motions asserted that the requested information had already been provided to the defendants, did not exist, or was neutral and thereby not subject to *Brady* obligations.[10]

The Magistrate Judge's review of the defendants' motions to compel discovery delineated the defendants' requests into seventeen categories:

(1) statements of witnesses to the robbery and shooting who do not identify Ofomata by name
(2) statements of witnesses who describe defendants differently
(3) information regarding individuals who were suspected in the crimes
(4) recorded phone calls of co-defendant Jeremy Esteves during which Ofomata is not mentioned
(5) information implicating anyone other than Ofomata
(6) statements from Jasmine, Jamesha, and/or Marquita Theophile that do not mention Ofomata by name
(7) all recordings of calls to Crimestoppers that do not implicate Ofomata
(8) information pertaining to George's loading cards with money from the robbery
(9) information pertaining to Rashad Montague's interviews in which Ofomata is not mentioned
(10) same as to Ard Singleton's interviews
(11) information regarding George's participation in drug trafficking with a firearm
(12) information regarding George's participation in robbery
(13) information regarding George's statements that he lacks remorse
(14) all calls to Crimestoppers that implicate someone other than Ofomata
(15) information implicating anyone else in the planning or commission of the crimes
(16) any mitigating evidence favorable to Ofomata at the sentencing hearing
(17) any aggravating evidence with regard to other co-defendants at the sentencing hearing[11]

---

[9] *See generally* R. Doc. Nos. 335, 337, & 372.
[10] *See* R. Doc. No. 354, at 1.
[11] R. Doc. No. 462, at 3–4.

4

The Magistrate Judge ordered that the government satisfy requests 11 and 12 and provide the grand jury testimony of Jasmine Theophile within seven days of the Magistrate Judge's ruling.[12] The Magistrate Judge concluded that requests 1–2, 4–7, 9–10, and 14–15 were neutral; that request 3 had already been provided to the defendants and would not "lead[] to *Brady* information at this time"; and that request 8 would not be exculpatory because "[i]nformation that George loaded cards with money from the robbery would only tend to incriminate him and perhaps others."[13] The Magistrate Judge found requests 13, 16, and 17 to be premature because the defendants' guilt or innocence had not yet been adjudicated.[14] Noting that the defendants may re-urge requests 13 and 17 at a later stage, if appropriate, the Magistrate Judge also highlighted the government's duty to produce all mitigating evidence relevant to the sentencing phase if such evidence becomes known.[15]

### ii. *The* Brady *Standard As Applied to the Defendants' Evidentiary Requests*

The defendants argue that the Magistrate Judge's order was contrary to law because it applied a "post-conviction 'materiality' standard" rather than a favorability standard to the requested information.[16] As the Fifth Circuit has explained, a *Brady*

---

[12] *Id.* at 5–6.
[13] *Id.* at 4–5.
[14] *See id.* The Magistrate Judge's order with respect to request 17 contains a typographical error. *See id.* at 6. Although the order refers to "Request No. 12," the Magistrate Judge has clarified to the Court that this portion of the order refers to request 17.
[15] *See id.*
[16] *See* R. Doc. No. 535-1, at 11.

violation occurs when: "(1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material.'" *United States v. Cessa*, 861 F.3d 121, 128 (5th Cir. 2017) (quoting *United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016)). The United States Supreme Court has held that "the government violates the Constitution's Due Process Clause 'if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment.'" *Turner v. United States*, 137 S. Ct. 1885, 1888 (2017) (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Cessa*, 861 F.3d at 128 (citing *Dvorin*, 817 F.3d at 451); *Strickler*, 527 U.S. at 280.[17]

---

[17] Courts have noted the distinction between the materiality standard applied to post-conviction appellate review of alleged *Brady* violations and the favorability standard applied to pretrial disclosure obligations. *See Turner*, 137 S. Ct. at 1893 (affirming that a "'prudent prosecutor['s]' 'better course is to take care to disclose any evidence favorable to the defendant'" while holding that the government did not violate its *Brady* obligation to disclose material evidence because there was no "reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'") (quoting *Kyles*, 514 U.S. at 434; *Cone v. Bell*, 556 U.S. 449, 469–70 (2009)); *United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013) (noting that "some trial courts therefore have concluded that the retrospective definition of materiality is appropriate only in the context of appellate review, and that trial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial") (citations omitted); *United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (explaining that "[t]he 'materiality standard usually associated with *Brady* . . . should not be applied to pretrial discovery of exculpatory materials," and that "the proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense") (citing *United States v. Acosta*, 357 F. Supp. 2d 1228, 1239-40 (D. Nev. 2005)); *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) ("The only question before (and even during) trial is whether the evidence at issue may be

The defendants have not demonstrated that the Magistrate Judge applied an incorrect legal standard to her rulings. As the defendants themselves highlight in their motion, the Magistrate Judge based her denials of the defendants' requests to compel the production of certain categories of information on her conclusion that such evidence was "neutral—not exculpatory—evidence, and it therefore falls outside the purview of *Brady*."[18] There is no suggestion in the Magistrate Judge's order that her rulings were based on her evaluation of materiality. As the Magistrate Judge made clear in her order, "*Brady* material is ***any*** evidence favorable to the accused," and the government "***has a duty*** to learn of any favorable evidence ***known to the others acting on the government's behalf*** in th[e] case, including the police."[19]

Moreover, in response to the government's position at the July 3, 2019 oral hearing, the Magistrate Judge reminded the government in her order that the *Brady* standard was not synonymous with "exoneration" and that the standard applied to "a larger swath of material than material that would merely exonerate a defendant."[20] The Magistrate Judge emphasized to the government that the government could not "simply wait and see whether any *Brady* material may arise during its investigation" because the government has an "affirmative duty to search

---

'favorable to the accused'; if so, it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial.").

[18] R. Doc. No. 535-1, at 11 (quoting R. Doc. No. 462, at 7).
[19] R. Doc. No. 462, at 7 (emphasis in original) (quoting *Strickler*, 527 U.S. at 281).
[20] *Id.*

for *Brady* material and should actively do so."²¹ The Court finds that the legal reasoning of the Magistrate Judge was not clearly erroneous or contrary to law.

The defendants further object to the Magistrate Judge's rulings denying their requests for information they allege to be *Brady* material because, according to the defendants, the Magistrate Judge made a "categorical" determination that certain information was neutral, rather than conducting a "fact-specific inquiry" into the "favorable value" of the evidence requested.²² After reviewing the case law and the record, the Magistrate Judge concluded that requests 1–2, 4–7, 9–10, and 14–15 pertained to neutral evidence, and she denied the requests on that basis.²³ To support their argument as to their claim that the Magistrate Judge erred by making a "categorical" determination with respect to their requests, the defendants point to the "cases cited in the magistrate's order," which, according to the defendants, "simply determine, under the facts of the specific case, that the information requested was neutral *in that case*."²⁴ According to the defendants, these case citations demonstrate that the Magistrate Judge's order was "contrary to law."²⁵ The Court finds this argument to be unconvincing.

---

²¹ *Id.*
²² R. Doc. No. 535-1, at 12–13.
²³ *See* R. Doc. No. 462, at 4. Although the Court does not agree that these requests all pertain to neutral evidence not subject to disclosure under *Brady*, the Court finds, for the reasons discussed herein, that the government has satisfied its *Brady* obligation as to such evidence of which the government is aware.
²⁴ R. Doc. No. 535-1, at 13.
²⁵ *Id.* at 12.

The Magistrate Judge's order reflects a consideration of the circumstances specific to this case—notably, the fact that the government had already provided the defendants with the Supplemental homicide report, which contained the requested information regarding initial alternative suspects, and the government's affirmation that no individual other than the defendants charged in this case is a suspect.[26] The cases that the Magistrate Judge cited in her order reflect her considered review of the applicable case law relative to the issues that were before her.

    iii. ***The Magistrate Judge's Specific Rulings on the Defendants'* Brady *Requests***

The Court finds that the Magistrate Judge's rulings on requests 1, 2, 3, 6, 7, 9, 10, and 14 were not clearly erroneous because it appears that the government has already provided the defendants with the information requested within these categories to the extent that such information is in the government's possession. With respect to requests 1 and 2 for statements of witnesses to the robbery, the government provided the defendants with the New Orleans Police Department ("NOPD") supplemental homicide report, which "summarizes all witness statements."[27] The government had also already satisfied requests 6 and 7. At the May 29, 2019 hearing before the Magistrate Judge, the government stated that it had provided the defendants with the grand jury testimony of Marquita Theophile and that it would provide them with the FBI 302s of Marquita Theophile and Jasmine Theophile.[28] At

---

[26] *See* R. Doc. No. 462, at 4.
[27] R. Doc. No. 354, at 4.
[28] R. Doc. No. 374, at 21 (transcript of May 29, 2019 hearing).

9

the July 3, 2019 hearing, George's counsel affirmed that the request for transcripts of grand jury testimony had been fulfilled.[29] The defendants have also received all Crimestoppers tips related to the offense,[30] as well as the 302s for Ard Singleton and Rashad Montague.[31]

With respect to request 4, the government explained at the July 3, 2019 hearing that it was not continuously monitoring all phone calls made by the defendants in prison and that it would provide defense counsel with recordings of the calls that the government intends to use at trial.[32] Moreover, defense counsel acknowledged that "[t]here is no issue with us subpoenaing [the recordings]."[33] *See Kutzner*, 303 F.3d at 336 ("When evidence is equally available to both the defense and the prosecution, the defendant must bear the responsibility of failing to conduct a diligent investigation.") (citing *Herrera v. Collins*, 954 F.2d 1029, 1032 (5th Cir.1992), *aff'd*, 506 U.S. 390 (1993)).

The Court agrees with the Magistrate Judge's ruling on request 8, "information pertaining to George's loading cards with money from the robbery," that such information is not subject to disclosure under *Brady*.[34] The defendants have not explained how such specified information would be favorable or exculpatory.

---

[29] R. Doc. No. 441, at 16 ¶¶ 3–4 (transcript of July 3, 2019 hearing).
[30] R. Doc. No. 401, at 6.
[31] R. Doc. No. 335-1, at 6, 7.
[32] *See* R. Doc. No. 441, at 27 ¶¶ 23–25, 28 ¶¶ 1–18.
[33] *Id*. at 16 ¶¶ 3–4.
[34] *See* R. Doc. No. 462, at 5.

10

The Court also finds that the Magistrate Judge's rulings on requests 5 and 15, which seek information that implicates anyone other than the defendants, were not clearly erroneous. Although the Magistrate Judge found that these requests pertained to "neutral" evidence, the Court recognizes that there may be circumstances in which such information may be favorable to the defendants and thereby subject to disclosure under *Brady*. However, it appears that the government has already provided the defendants with evidence of which it is currently aware with respect to these requests.[35] As the government affirmed at the July 3, 2019 hearing, the government had provided defense counsel with "the entirety of the NOPD case file," which included "a NOPD suspect file number 2" that contained information about "alternate suspects who either were investigated by the New Orleans Police Department or who they received information about from concerned citizens."[36] The government also informed the Magistrate Judge that there are no other current suspects besides the defendants charged in this case.[37]

The defendants argue that the Magistrate Judge's rulings on request 3 and "potentially Requests 11 and 12" were contrary to law because they "absolve the government of its obligation under *Brady*."[38] As stated previously, the defendants already have the information for request 3, as the government provided them with

---

[35] The Court underscores to the government that *Brady* obligations continue through trial and do not depend on a request from the defendants. *Cessa*, 861 F.3d at 134 n.3.
[36] R. Doc. No. 441, at 25 ¶¶ 3–8.
[37] *See* R. Doc. No. 462, at 4; R. Doc. No. 354, at 4. Jeremy Esteves and Robert Brumfield, III are also charged with George, Johnson, and Ofomata, for the bank robbery and murder of Hector Trochez. *See* R. Doc. No. 237.
[38] R. Doc. No. 535-1, at 18.

11

the entire NOPD case file, which contains information regarding other initial suspects.[39] And, as the government confirmed, there are no other current suspects besides the defendants charged in this case. With respect to requests 11 and 12, the Magistrate Judge ordered the government to satisfy these requests by "produc[ing] the 302s that it has in its possession" regarding George's alleged participation in trafficking with a firearm, George's alleged participation in a 2007 robbery, and Ofomata's alleged participation in the murders of two people in 2008.[40] Furthermore, the defendants acknowledge that the Magistrate Judge emphasized to the government its overriding obligation to "comply with *Brady* and to affirmatively seek such evidence."[41] While the defendants qualify their objection as one made out of an "abundance of caution,"[42] they have not demonstrated that the Magistrate Judge "impliedly absolve[d] the government of its ongoing *Brady* obligation."[43]

The defendants ask the Court to overturn the Magistrate Judge's rulings with respect to requests 13, 16, and 17, which seek information for the sentencing phase of the capital proceedings. The Magistrate Judge denied these requests as premature, while "reserv[ing] the right to any defendant to re-urge this issue at the appropriate

---

[39] *See* R. Doc. No. 441, at 25 ¶¶ 3–8.
[40] R. Doc. No. 535-1, at 19 (quoting R. Doc. No. 462, at 5–6); *see* R. Doc. No. 462, at 6 n. 2. Counsel for Ofomata informed the Magistrate Judge at the July 3, 2019 hearing that the government had agreed to provide the requested information as to Ofomata's alleged 2008 homicides within fourteen days. R. Doc. No. 441, at 17 ¶¶ 23–25.
[41] R. Doc. No. 535-1, at 19 (citing R. Doc. No. 462, at 7).
[42] *Id.* at 20.
[43] *Id.*

time," because no defendant's guilt or innocence has yet been adjudicated.[44] The defendants argue that the Magistrate Judge's rulings on these requests are not supported by this Court's prior orders and that they "relieve[] the government of its obligation, central under *Brady* and its progeny, to turn over favorable evidence relevant to sentencing."[45]

The Court disagrees with the Magistrate Judge that requests 13, 16, and 17, which seek aggravating and mitigating information relevant to the sentencing phase, are premature. The *Brady* obligation applies to evidence that is "material either to guilt or to punishment." *Strickler*, 527 U.S. at 280. However, "[f]air notice of the charges leveled and the issues to be resolved is one thing; any claim to notice of [government] *evidence* stands on quite a different footing because '[t]here is no general constitutional right to discovery in a criminal case, and *Brady*,' which addressed only exculpatory evidence, 'did not create one.'" *Wooten v. Thaler*, 598 F.3d

---

[44] R. Doc. No. 462, at 6. As stated previously, the Magistrate Judge confirmed that the reference to "Request No. 12" on page 6 of the order is a typographical error. This portion of the order refers to request 17.

[45] R. Doc. No. 535-1, at 21–22. The out-of-circuit district court case that the defendants cite in support of their argument discusses the applicability not of *Brady*, but of Federal Rule of Criminal Procedure 16(a)(1)(E)(i), to pretrial discovery of information that is "material" to defense preparation for trial. *See id.* at 23. In *United States v. Tsarnaev*, the court found that Rule 16(a)(1)(E)(i) applied to the sentencing phase of a capital case, but the defendants have not cited, nor has the Court found, any other case that follows this conclusion. *See United States v. Tsarnaev*, No. 13-10200-GAO, 2013 WL 6196279, at *4 (D. Mass. Nov. 27, 2013). Furthermore, the court in *Tsarnaev* held that "the defendant bears the burden of making a 'prima facie showing of materiality.'" *Id.* (quoting *United States v. Bulgur*, 928 F. Supp. 2d 305, 324 (D. Mass. 2013)). The defendants have not made any such showing here with respect to the information they requested.

215, 219 (5th Cir. 2010) (quoting *Gray v. Netherland*, 518 U.S. 152, 164 (1996)). In relation to the sentencing phase of a capital trial, the government is not required to provide specific evidence of the aggravating factors stated in the notice of intent to seek the death penalty. *United States v. LeCroy*, 441 F.3d 914, 929 (11th Cir. 2006); *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003); *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001).

With respect to request 13, made **only** by Ofomata for information pertaining to George's statements indicating George's lack of remorse,[46] Ofomata has not specified how such information would be favorable as to Ofomata. With respect to requests 16 and 17, the Court finds such requests to be overly broad. As the Supreme Court has stated, "We have never held that the Constitution demands an open file policy." *Kyles*, 514 U.S. at 437; *see also United States v. Beasley*, 576 F. 2d 626, 630 (5th Cir. 1978) ("*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation.") (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)). The government has asserted that it has already provided the defendants with FBI 302s documenting the 2007 armed robbery listed as a non-statutory aggravating factor in the notice of intent to seek the death penalty against George,[47] and it informed the Magistrate Judge that it would provide Ofomata with the information

---

[46] *See* R. Doc. No. 535-1, at 9; R. Doc. No. 462, at 4.
[47] R. Doc. No. 401, at 4. The government also advised the Magistrate Judge that it will provide "any additional reports of investigation, photographs, videos, ballistic reports, and trace evidence reports of forensic analysis, as requested by George, should they become known to the government and which provides information about the facts of the 2007 robbery." R. Doc. No. 462, at 19.

14

requested regarding Ofomata's alleged 2008 homicides within fourteen days of the July 3, 2019 hearing.[48] *See United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) ("*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess.") (quoting *United States v. Beaver*, 524 F.2d 963, 966 (5th Cir. 1975)). If additional favorable evidence relevant to the sentencing phase becomes known to the government, the government shall provide such evidence to the defendants in adequate time to prepare a defense.[49] *See United States v. Neal*, 27 F. 3d 1035, 1050 (5th Cir. 1994).

The defendants further argue that the Magistrate Judge's order should be set aside "to the extent that it does not fully capture the various requests made."[50] The defendants point to the Magistrate Judge's specific references to Ofomata in her 17-item categorization of the requests, "despite the fact that all three defendants submitted requests for such information as it pertained to them."[51]

The defendant's motion provides a helpful summary chart of each defendant's requests, which shows that requests 1, 4, 5, 14, and 16, which the Magistrate Judge enumerated relative to Ofomata, were similarly made by Johnson and/or George as

---

[48] R. Doc. No. 441, at 17 ¶¶ 23–25.
[49] For example, with respect to the 2008 homicides allegedly committed by Ofomata, it would not be fair to the defense if the government withheld exculpatory or impeaching evidence in its possession until the sentencing hearing began. The government must provide the defendants with *Brady* material of which it is aware in a reasonable time before trial.
[50] R. Doc. No. 535-1, at 10.
[51] *Id.*

15

they pertained to that respective defendant.[52] The Magistrate Judge's rulings on these requests were not clearly erroneous, as the reasons to deny these requests relative to Ofomata apply equally to the identical requests by George and Johnson. Moreover, request 15 as formulated by the Magistrate Judge, "information implicating anyone else in the planning or commission of the crimes," encapsulates the requests by George and Johnson for such information that they allege the Magistrate Judge did not address in her order.[53]

### C. Rule 16 Discovery Requests

In the defendants' joint motion to compel discovery pursuant to Federal Rule of Criminal Procedure 16, the defendants requested an order that the government provide "*all* Rule 16 discovery in its possession" and identified thirteen categories of requested information.[54] These categories are:

(1) *Brady* information and materials related to alternate suspects
(2) IBIS and NIBIN examinations and reports
(3) reports of any ballistics testing
(4) geolocation information
(5) all materials related to the alleged participation in prior crimes to be introduced at sentencing

---

[52] *See id.* at 6–10. The defendants' chart also shows that Johnson requested "any and all information tending to show that the scarf/bandana referenced in the True Allele report contains DNA belonging to anyone other than Curtis Johnson, including the owner of the bandana." *Id.* at 9–10. Although the Magistrate Judge did not address this request specifically in her order, she discussed the request with Johnson's counsel and the government at the July 3, 2019 hearing, *See* R. Doc. No. 441, at 21–24. The government informed the Magistrate Judge that it had requested the cybergenetics file and DNA information and would provide defense counsel with the report "upon receipt." *Id.* at 24 ¶ 9.

[53] Additionally, as stated previously, several of these requests had already been satisfied through the government's production of the NOPD case file and all Crimestoppers tips.

[54] R. Doc. No. 361, at 1.

(6) any enhancements of the surveillance video of the Chase Bank on December 18, 2013
(7) all jail telephone recordings alleged to include the voice of any defendant
(8) correspondence alleged to be to any defendant which the government may intend to use at trial
(9) returns on search warrants issued on 4/16/2017 for pre-paid debit/gift cards seized from or attributed to Jasmine Theophile
(10) "[c]onsent to search phone in possession of Robert Brumfield and copy of photograph time-stamped 12/16/13 allegedly found on phone
(11) transcript of Brumfield's testimony to the grand jury
(12) any and all Crimestoppers tips
(13) search warrant and "search warrant affidavit upon which warrant predicated purporting to authorize search of Mr. George's jail cell and all documents seized pursuant to it"[55]

The government's response to this motion addressed each category.[56] For twelve of the thirteen categories, the government asserted that the information had already been provided, to the extent that such information was in the government's possession, or that the government was in the process of obtaining the information and would produce it upon receipt.[57] As to the defendants' request in the remaining category for information regarding the alleged participation of George and Ofomata in prior crimes, the government argued that Rule 16 did not apply to the penalty phase of a capital trial.[58]

The Magistrate Judge denied the defendants' joint motion to compel Rule 16 discovery based on the government's representations in its written response and at the oral hearing that it either had already produced the requested information that it had in its possession—provided that such information was not subject to attorney-

---

[55] *See id.* at 3–10.
[56] *See* R. Doc. No. 401.
[57] *See id.*
[58] *See id.* at 3–4.

17

client or work-product privileges—or had requested the information from the relevant source and would produce it once received.[59] The Magistrate Judge also noted that prior to the oral hearing, the government had provided the defendants with supplemental documents, which the defendants had not yet had sufficient time to review.[60] The Magistrate Judge concluded that it "can not [sic] order the government to produce what it avows to the Court — under penalty of sanctions — that it does not have."[61]

The Magistrate Judge's denial of the defendants' joint motion to compel Rule 16 discovery was not clearly erroneous or contrary to law. As explained at the July 3, 2019 hearing and through the parties' submissions in the record, the requests for "materials related to alternate suspects," IBIS and NIBIN information, "materials related to the alleged participation in prior crimes to be introduced at trial," jail telephone recordings, grand jury testimony by Brumfield, and Crimestoppers tips had been satisfied to the extent that such information was available to the government. Also at the July 3, 2019 hearing, the government informed the Magistrate Judge that it was in the process of obtaining from the NOPD the search warrants that the defendants requested.[62]

The defendants claim that the Magistrate Judge's order "shielded the government from disclosing materials which are 'in the possession of United States

---

[59] *See* R. Doc. No. 462, at 8.
[60] *See id.*
[61] *Id.*
[62] R. Doc. No. 441, at 28 ¶¶ 20–24.

executive investigatory agencies who aid in such prosecution.'"[63] However, as the Magistrate Judge explained in her order, she asked the government at the July 3, 2019 hearing "whether it had turned over everything in its possession not withheld on the ground of the attorney-client or work-product privileges."[64] As stated previously, the government has a "duty to learn of any favorable evidence known to others acting on the government's behalf in this case." *Kyles*, 514 U.S. at 437. Based on the government's assertion that it had provided all such information and would produce additional evidence when it received it, the Magistrate Judge concluded that she could not order the government to produce information that it "avows to the Court — under penalty of sanctions — that it does not have."[65] This determination was not clearly erroneous or contrary to law.

## II. CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion is **DENIED**.

**IT IS FURTHER ORDERED** that George's third motion to strike non-statutory aggravating factor "Other Criminal Conduct – Armed Robbery" is **DENIED**.

---

[63] R. Doc. No. 535-1, at 26 (quoting *United States v. Palazzo*, No. 05-266, 2012 WL 3546922, at *4 (E.D. La. Aug. 16, 2012)).
[64] R. Doc. No. 462, at 8.
[65] *Id*.

New Orleans, Louisiana, October 8, 2019.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**