UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NUMBER 17-201 |
| LILBEAR GEORGE, ET AL. | * | SECTION "I" |

**MEMORANDUM IN SUPPORT OF MOTION TO
BAR THE DEATH PENALTY BECAUSE IT IS APPLIED IN
AN ARBITRARY, DISPROPORTIONATE, AND DISCRIMINATORY MANNER**

COME NOW LILBEAR GEORGE, CURTIS JOHNSON and CHUKWUDI OFOMATA, through undersigned counsel, and respectfully move this Court pursuant to the Fourth, Fifth, Sixth and Eighth Amendments to bar the death penalty in this case as unconstitutionally arbitrary, disproportionate, and discriminatory, or, in the alternative, hold the Federal Death Penalty Act unconstitutional as applied to their cases, or, in the alternative, order the discovery and evidentiary hearing requested to further prove the allegations set forth in this motion.

This case is the first capitally-authorized prosecution in the Eastern District of Louisiana in 15 years. The last—another group of black men accused of killing during a bank robbery—ultimately resulted in life sentences for both defendants. *United States v. Johnson et al.*, No. 04-CR-17 (E.D. La. Feb. 1, 2005), ECF Nos. 120 & 121. The only person on federal death row from the district is Len Davis, the NOPD officer convicted of ordering the 1994 killing of a witness against him. *United States v. Davis et al*, No. 94-CR-381 (E.D. La. Jul. 31, 1995), ECF No. 178. This hiatus of death sentences is not confined to federal court—it has been 23 years since anyone was sentenced to death for a crime in Orleans Parish.[1] Put another way, there have been just under

---

[1] The last person sentenced to death in Orleans Parish was Clarence Harris in 1997. *See State v. Harris*, 892 So. 2d 1238 (La. 2005). In 2009 a jury initially recommended a death sentence for Michael Anderson, but no death sentence was ever imposed. Instead, the trial court granted Mr. Anderson's motion for new trial based on newly-discovered evidence demonstrating grave prosecutorial misconduct pointing to the possibility of innocence. *State v.*

*six thousand* murders committed in the Eastern District of Louisiana since the last time anyone was sent to federal death row.[2]

In the context of this rarity, this motion demonstrates that the application of the Federal Death Penalty Act to Mr. George, Mr. Johnson, and Mr. Ofomata would be unconstitutional on multiple grounds. First, the motion demonstrates that application to this case would be unconstitutionally arbitrary, defying the Supreme Court's command that death is reserved for only the worst of the worst. Second, it demonstrates that the federal death penalty is implemented in an unconstitutionally arbitrary manner with respect to geography. Third, it demonstrates that, in its application, the FDPA is unconstitutionally applied disproportionately to black defendants with non-black victims. Finally, the motion demonstrates that the FDPA is unconstitutional because it does not provide for appellate proportionality review—a right provided in Louisiana state cases— despite the effect that review would have on mitigating the arbitrariness identified in Parts I through III. The motion then urges that, should it not be convinced, this Court grant the defendants' request for discovery and an evidentiary hearing in order to further prove the allegations set forth in this motion.

I.     **The decision to seek death against Mr. George, Mr. Johnson, and Mr. Ofomata is unconstitutionally arbitrary and disproportionate.**

A constitutional system of capital punishment avoids arbitrary imposition of the death sentence by applying a principled basis for distinguishing the comparatively few cases in which the death sentence is imposed from the many in which it is not. *See Godfrey v. Georgia*, 446 U.S.

---

*Michael Anderson*, No. 472-217 (Orleans Parish Criminal District Court, Mar. 8, 2010); *see also* Gwen Filosa, *Judge grants Michael Anderson new trial in 2006 Central City massacre case*, New Orleans Times Picayune (Mar. 8, 2010), https://www.nola.com/news/crime_police/article_cfb20294-f581-5ce9-aaca-36626aa04a39.html.

[2] FBI Uniform Crime Reports report 5,959 murders in the New Orleans Metropolitan Area (Jefferson, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, and St. Tammany Parishes) between 1996 and 2018, excluding 2005 when no reliable statistics were available. Fed. Bureau of Investigation, Uniform Crime Reports (1996 – 2018), https://ucr.fbi.gov/crime-in-the-u.s (Table 6 in each annual report).

420, 433 (1980). The Supreme Court cautions that the tragedy of murder alone is not sufficient to warrant a death sentence. *Cf. Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Instead, "[c]apital punishment must be limited to those offenders who commit 'a narrow category of the most serious crimes' and whose extreme culpability makes them 'the most deserving of execution.'" *Roper v. Simmons*, 543 U.S. 551, 568 (2005).

The decision to seek to execute Mr. George, Mr. Johnson, and Mr. Ofomata for the death of Hector Trochez cannot be squared with this requirement. The killing of an armed adult man in the course of a botched armed robbery is tragic. It shatters the lives of those who loved him, and undoubtedly leaves the world poorer for his loss. But this is the heartbreaking result of every murder. A full review of the implementation of the Federal Death Penalty Act, both in the Eastern District of Louisiana, and nationwide, demonstrates that the decision to seek death in this case is unconstitutionally arbitrary.

The decision to seek death is exceedingly rare in the Eastern District of Louisiana. Indeed, only two cases have been authorized in the last twenty five years—this case and the indictment of John Johnson and Joseph Smith—two black men also accused of a killing in the course of a botched bank robbery.[3] *See United States v. John Johnson et al*, No. 04-CR-17 (E.D. La. Jun. 17, 2005).[4] As any resident of the district knows, this is not because the area is immune from violent crime. Instead, the United States Attorney's Office and the Department of Justice have been repeatedly faced with the decision whether to seek death against defendants, and have repeatedly

---

[3] The racially discriminatory impact that this coincidence suggests is borne out by nationwide statistics. This issue is set out in Part III below. Both Mr. Johnson and Mr. Smith were ultimately spared death sentences due to findings that intellectual disability constitutionally barred that sentence.

[4] The last capitally-authorized case before this was that of Len Davis and Paul Hardy. *United States v. Paul Hardy, et al.*, No. 94-cr-00381 (E.D. La.).

declined to do so, apparently determining that the offenses did not warrant execution. These defendants include:

- **Armstead Kieffer and Jerome Kieffer**: sentenced to life after conviction at a non-capital trial "for their roles in a 2015 armored car robbery and a 2017 attempted armored car robbery in which Loomis guard James McBride was killed."[5]

- **Lionel Allen**: sentenced to life after conviction at a non-capital trial. "The jury found ALLEN guilty of conspiracy to possess firearms during and in relation to crimes of violence and drug trafficking crimes, assault with a dangerous weapon, and three murders.  Specifically, ALLEN was convicted of participating in the shooting death of Vennie Smith on April 22, 2012, the shooting and killing Deshawn Hartford on June 3, 2012, and for being an aider and abettor in the shooting death of Travis Thomas that occurred on the I-10 on May 6, 2013."[6]

- **Gregory Denson**: sentenced to 30 years after a guilty plea "to an eight-count Superseding Bill of Information charging him with murder of a federal witness, Hobbs Act conspiracy, multiple Hobbs Act robberies, and obstruction of official proceedings."[7]

---

[5] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *Armstead and Jerome Kieffer, Father and Son, Sentenced To Life in Prison for Felony Murder Related To May 2017 Loomis Armored Car Robbery* (Mar. 20, 2019), https://www.justice.gov/usao-edla/pr/armstead-and-jerome-kieffer-father-and-son-sentenced-life-prison-felony-murder-related.

[6] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *Young Melph Mafia Gang Member Sentenced to Life in Prison Plus 35 Years Following Convictions on Rico, Gun and Murder Charges* (Dec. 13, 2017), https://www.justice.gov/usao-edla/pr/young-melph-mafia-gang-member-sentenced-life-prison-plus-35-years-following-convictions.

[7] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *New Orleans Man Pleads Guilty To Murder of a Federal Witness* (Dec. 1, 2017) https://www.justice.gov/usao-edla/pr/new-orleans-man-pleads-guilty-murder-federal-witness.

- **Jawan Fortia**: sentenced to life after a non-capital trial. Fortia was found "guilty of conspiracy to commit RICO violations, conspiracy to distribute and possess with intent to distribute more than 280 grams of crack cocaine and a quantity of marijuana, conspiracy to possess firearms during and in relation to crimes of violence and drug trafficking crimes, assault with a dangerous weapon and one murder.  Specifically, Fortia was convicted of participating in the drive-by shooting death of Vennie 'Funk' Smith that occurred on April 22, 2012, on Martin Luther King Boulevard."[8]

- **Evan Lewis:** sentenced to life after non-capital trial. Lewis "a gunman and drug distributor" for the 39ers gang, was convicted of murdering Littlejohn Haynes.[9]

- **Walter Porter**: sentenced to life "for his participation in the November 2010 murder of Christopher 'Tiger' Smith" on charges including "conspiracy to use interstate commerce facilities in the commission of murder-for-hire" and "causing death through the use of a firearm."

- Porter's sentence was set to "run concurrently with Porter's life sentence imposed on November 9, 2016, for his involvement as a [Telly] HANKTON gang associate." Which included three counts of murder in aid of racketeering, and three counts of causing death through the use of a firearm.[10]

---

[8] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *Second Young Melph Mafia Gang Member Sentenced to Life in Prison Following Convictions On Rico, Gun, Drug, and Murder Charges* (Oct. 3, 2017), https://www.justice.gov/usao-edla/pr/second-young-melph-mafia-gang-member-sentenced-life-prison-following-convictions-rico (Oct. 3, 2017).

[9] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *39ers Gang Member Evans Lewis Sentenced* (Aug. 16, 2017), https://www.justice.gov/usao-edla/pr/39ers-gang-member-evans-lewis-sentenced.

[10] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *Walter Porter Sentenced to Life for Murder-for-Hire* (Nov. 16, 2016), https://www.justice.gov/usao-edla/pr/walter-porter-sentenced-life-murder-hire.

- **Telly Hankton**: the infamous gang leader was sentenced to life after a non-capital trial for offenses including three counts of murder in aid of racketeering, and three counts of causing death through the use of a firearm.[11]

- **Sidney Patterson**, **Deloyd Jones**, and **Byron Jones**: sentenced to life after a non-capital trial in which each was convicted of one or more murders as part of the Ride or Die gang "The gang controlled the St. Roch neighborhood for its narcotics distribution activities through violence and threats of violence, to include murder, attempted murder, and assaults."[12]

- **Baron Smith** and **Calvin Alexander**: accused in a non-capital indictment with double murder, on charges including "us[ing] a facility of interstate commerce to commit a murder for hire" and § 924(j).[13]

- **Isaac Smith**: sentenced to life for role in Harvey Hustlers organization, specifically "to being a drug distributor and gunman for the organization, and admitted to his role in four murders, including a vicious double murder of a couple whose children, were unharmed while in the backseat of their vehicle when the shooting occurred, and a 74 year old woman whose grandson was the target of the attack . . . ."[14]

---

[11] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *Telly Hankton and Three Gang Associates Receive Life Sentences* (Nov. 9, 2016), https://www.justice.gov/usao-edla/pr/telly-hankton-and-three-gang-associates-receive-life-sentences.

[12] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *Ride or Die Gang Member Sentenced to Life in Prison Following Convictions on RICO, Drugs and Murder Charges* (May 20, 2016), https://www.justice.gov/usao-edla/pr/ride-or-die-gang-member-sentenced-life-prison-following-convictions-rico-drugs-and.

[13] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *Hammond Men Indicted for Participation in Drug Related Homicides and in Drug Overdose Death* (May 13, 2016) https://www.justice.gov/usao-edla/pr/hammond-men-indicted-participation-drug-related-homicides-and-drug-overdose-death.

[14] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *Violent Harvey Hustlers Gang Members Sentenced to Lengthy Prison Sentences* (Apr. 21, 2016) https://www.justice.gov/usao-edla/pr/violent-harvey-hustlers-gang-members-sentenced-lengthy-prison-sentences.

- **Quincy Lee Jynes:** pleaded guilty to "a seven-count Fourth Superseding Bill of Information to various robberies, weapons offenses, obstruction of justice, as well as murder.  Both face potential life sentences."[15]

- **Terrence Kelley**: sentenced to 40 years after pleading guilty "to murdering a man to further his group's drug trafficking activities and admit[ing] to his role in two other shootings where the victims lived." He was among the last defendants to plead guilty in "twelve-defendant federal indictment charging drug and gun conspiracies, multiple shootings, and four murders against an off-shoot of the Harvey Hustlers gang."[16]

- **Ray Woodruff** and **Frankie Hoofkin:** sentenced to 30 and 35 years respectively after pleading guilty to "conspiring to distribute a kilogram or more of heroin and 280 grams or more of crack cocaine and to murdering a man to further their group's drug trafficking activities."[17]

- **Jamal Walton**: sentenced to 40 years "for his role in a carjacking that resulted in the death of Nathaniel Robertson."[18]

---

[15] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *Two Plead Guilty to Robbing Metro Drug Dealers, Murder and Weapons Offenses* (Nov. 19, 2015) https://www.justice.gov/usao-edla/pr/two-plead-guilty-robbing-metro-drug-dealers-murder-and-weapons-offenses.

[16] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *Last Members of Harvery Hustlers Federal Indictment Plead Guilty to Drug Dealing and Murder Charges* (Nov. 12, 2015), https://www.justice.gov/usao-edla/pr/last-members-harvery-hustlers-federal-indictment-plead-guilty-drug-dealing-and-murder.

[17] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *Westbank Drug Dealers Plead Guilty and Admit Role in Two Murders* (Sep. 22, 2015), https://www.justice.gov/usao-edla/pr/westbank-drug-dealers-plead-guilty-and-admit-role-two-murders.

[18] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *New Orleans Man Sentenced to 40 Years in the Carjacking and Killing of a New Orleans Resident* (Mar. 30, 2012) https://www.justice.gov/archive/usao/lae/news/2012/2012_03_30_jamal_walton_sent.html.

- **Steven Earl Hardrick**: sentenced to 30 years, having been charged with the "murder of Dwayne Landry, the October 13, 2007, home invasion, shooting and killing of off-duty New Orleans Police Officer Thelonius Dukes, and the October 24, 2007, carjacking and murder of Brett Jacobs, David Alford, and Howard Pickens."[19]

- **Charles Raymond**: sentenced to life plus ten years after he "was convicted by a federal jury of participating in a carjacking of Nathaniel Robertson during [which] RAYMOND shot and killed Roberston in cold blood."[20]

These offenders—a selection of those who appear on the U.S. Attorney's Office's own website, touted as notable accomplishments—represent only a fraction of the death-eligible homicides committed in the district.[21] Indeed, in February 2016, the month that Lilbear George was arrested for this offense, this Court sentenced Harry Smoot to life in prison. *United States v. Smoot*, No. 14-CR-168 (E.D. La. Feb. 18, 2016), ECF No. 629. Smoot was "the leader and source of supply for a twelve member offshoot of the larger Harvey Hustlers group that was involved in the distribution of heroin and crack cocaine, as well as a conspiracy to possess firearms in furtherance of drug trafficking." Press Release, United States Attorney's Office, Eastern District of Louisiana, *A Leader of Harvey Hustlers Gang Sentenced to Life in Federal Prison* (Feb. 18, 2016), https://www.justice.gov/usao-edla/pr/leader-harvey-hustlers-gang-sentenced-life-federal-

---

[19] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *Federal Grand Jury Returns a Superseding Indictment Against Defendant For Violations of the Federal Controlled Substances Act, Federal Firearm Laws, Carjacking, Witness Tampering, and Murder* (Mar. 15, 2012) https://www.justice.gov/archive/usao/lae/news/2012/2012_03_15_steven_earl_hardrick_sind.html.

[20] Press Release, U.S. Attorney's Office, Eastern District of Louisiana, *New Orleans Man Sentenced for Carjacking and Killing of New Orleans Resident* (Jan. 12, 2012), https://www.justice.gov/archive/usao/lae/news/2012/2012_01_12_charles_raymond_sent.html.

[21] The FBI reports that there were 5,959 murders in the metro area since 1996, with 4,459 in New Orleans alone. *See* n.2, *supra*.

prison. Smoot "admitted to his role in three murders, including a vicious double murder of a couple whose children, who were unharmed, were in the backseat of their vehicle when the shooting occurred and a seventy-four year old woman whose grandson was the target of the attack." *Id*.

Looking outside of Louisiana to the capital cases that have proceeded to trial in federal courts, but in which a death sentence has not been imposed, many involve crimes that were much more aggravated than the crime charged here, including the following summarized below:

- In *United States v. Zacarias Moussaoui*, No. 01-CR-455 (E.D. Va. May 4, 2016), a jury decided to sentence a terrorist responsible for the attacks against the U.S. on September 11, 2001 to a life sentence in prison.

- In *United States v. Alexis Candelario*, No. 09-CR-00427-JAF (D.P.R), the defendant with twelve prior murder convictions was convicted of killing eight more people, an unborn nine-month old fetus, and wounding twenty more people. He received a life sentence.

- In *United States v. Anh The Duong*, No. 01-CR-20154 JF (N.D. Cal.), the defendant was convicted of seven RICO murders occurring during multiple criminal episodes. He received a life sentence.

- In *United States v. Thomas Pitera*, No. 90-CR-0424 (E.D.N.Y), a Mafia hitman was convicted of killing seven people, including several murders which involved torture and dismemberment. He received a life sentence.

- In *United States v. Anthony Jones*, No. 96-CR-0458-WMN (D. Md.), the defendant was convicted of five murders, one in 1994, three in 1996 and one in 1997. Numerous other homicides were alleged against him in aggravation. He received a life sentence.

- In *United States v. Shaheem and Raheem Johnson*, No. 97-CR-00314-A (E.D. Va.), two brothers were convicted of murdering five people, two in Virginia, one in Maryland, one in Philadelphia and one in New York. Both defendants received life sentences.

- In *United States v. Juan Briseno*, No. 11-CR-077 (N.D. Ind.), the defendant charged with six RICO gun murders was convicted of five, and received a life sentence.

- In *United States v. Dean Anthony Beckford and Claude Dennis*, No. 96-CR-66-REP (E.D. Va.), the defendants were convicted of six drug-related murders. Both received life sentences.

- In *United States v. Tommy Edelin*, No. 98-CR-264-RCL (D.D.C.), 14 drug-related murders were alleged. The defendant was convicted and sentenced to life.

- In *United States v. Jared Loughner*, No. 11-CR-187 (D. Ariz.) the defendant was sentenced to life in prison pursuant to a plea agreement after pleading guilty to killing six people, including a federal judge, and wounding 13 others, including a congresswoman, during a mass shooting in Arizona.

The Supreme Court is clear—the Eighth Amendment commands that the death penalty be reserved for offenders who commit "a narrow category of the most serious crimes." *Atkins v. Virginia*, 536 U.S. 304, 319 (2002). The above discussion demonstrates that the Department of Justice's decision to seek the death penalty against Mr. George, Mr. Johnson, and Mr. Ofomata has not adhered to that command, and is therefore unconstitutionally arbitrary.

II.     **As implemented by the Department of Justice, the Federal Death Penalty Act reflects geographically disparate treatment of defendants exposed to a death sentence, and thus suffers from arbitrary enforcement.**

The decision to seek death in this case is subject to yet other arbitrary forces—in a recent dissent in *Glossip v. Gross*, Justices Breyer and Ginsberg found the American system of capital punishment was arbitrary because prosecutors in a small number of counties account for the vast majority of death sentences imposed in recent years. "Between 2004 and 2009," they point out, "just 29 counties (fewer than 1% of counties in the country) accounted for approximately half of all death sentences imposed nationwide. And in 2012, just 59 counties (fewer than 2% of counties in the country) accounted for all death sentences imposed nationwide." *Glossip v. Gross*, 135 S. Ct. 2726, 2761 (2015) (citations omitted). Similar disparity and arbitrariness exist in administration of the federal capital punishment system.

There are 94 judicial districts in the United States, each with its own United States Attorney. "To promote uniformity, United States Attorneys submit all death-eligible federal cases to the United States Attorney General for death-authorization." Cohen & Smith, *The Racial Geography of the Federal Death Penalty*, 85 Wash. L. Rev. 425, 429 (2010). The United States Attorneys' Manual states "[e]ach… decision [to seek the death penalty] must be based upon the facts and law applicable to the case and be set within a framework of consistent and even-handed national application of Federal capital sentencing laws." U.S. Dep't of Justice, United States Attorneys' Manual § 9.10-030, https://www.justice.gov/usam/unitedstates-attorneys-manual [hereinafter USAM]. "National consistency requires treating similar cases similarly, when the only material difference is the location of the crime. Reviewers in each district are understandably most familiar with local norms or practice in their district and State, but reviewers must also take care to contextualize a given case within national norms or practice. For this reason, the multi-tier

process used to make determinations [to seek a death sentence] is carefully designed to provide reviewers with access to the national decision-making context, and thereby, to reduce disparities across districts." USAM § 9-10.140(B).

Despite this goal of national uniformity, significant geographic disparity in DOJ's pursuit of capital punishment exists. Based on undersigned counsel's reasearch, 23 of the 94 federal districts have never had a case authorized for federal death-penalty prosecution. Since 1988, DOJ has authorized 534 death-penalty prosecutions. Of these, 37 were charged in the four districts in Texas (7% of the total), and 32 were charged in the two districts in Missouri (6% of the total). Thus 13% of federal capital prosecutions since 1988 come from just six districts. "More than half of all deathauthorizations come from fourteen federal districts." Cohen & Smith, 85 Wash. L. Rev. at 429. And out of the 86 federal death sentences imposed by juries since 1988, 545 (64%) come from the traditional "death belt" states that have historically executed the most people: Alabama, Arkansas, Florida, Georgia, Louisiana, Missouri, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, Virginia. As one federal judge said, "federal death penalty cases since 1988 have been concentrated in three states (Virginia, Texas, and Missouri) in a pattern consistent with the concentration of state death penalty cases." *United States v. Fell*, 224 F. Supp. 3d 327, 340 (D. Vt. 2016). If the same entity—DOJ—is applying the same standards to determine which capital prosecutions to authorize, there appears to be no rational basis for this geographic disparity. DOJ has never identified the federal interest advanced by a federal capital prosecution in states with the most prolific state capital prosecutions.

The rate of death sentences—that is the percentage of death sentences per trial where the death sentence is an option—also varies widely among federal districts. The D.C. Circuit (0%) and the 2nd Circuit (10%) are the lowest. The highest are the 8th Circuit (65%) and the 5th Circuit

(65%). Given the breadth of crimes covered by the FDPA, there is no rational reason for this geographic disparity. Where a crime is committed should not be a factor in whether a federal death sentence is imposed. However, geography does matter. The process is therefore unconstitutionally arbitrary. Moreover, given the broad scope of potential federal capital crimes, isolated regional use of the federal death penalty supports a broad consensus that capital punishment is not necessary:

> While there is no shortage of death-eligible murders in the United States each year, the number of murders in a particular location bears little relationship to the number of defendants from that jurisdiction who are sentenced to death federally. New York City had 596 homicides in 2003. Chicago had 599. Los Angeles had just under 500. Philadelphia had 348. The federal districts that encompass these four cities have sent a combined total of six defendants to federal death row since 1988. By contrast, the federal district that encompasses St. Louis (seventy-four murders in 2003) has sent three individuals to federal death row over that same time period. The Eastern District of Louisiana, which encompasses New Orleans (275 murders in 2003), has also sent three individuals to federal death row. If the quantity of death-eligible federal crime does not explain the number of death sentences sought in a jurisdiction, then we must wonder what does explain the seemingly random distribution of federal death penalty prosecutions and sentences.

Cohen & Smith, 85 Wash. L. Rev. at 431–32.

These kinds of disparities led one federal judge to conclude, "It is undeniable that there is no principled way to distinguish the few cases in which death is the result from the many equally abhorrent cases in which it is not." *Fell*, 224 F. Supp. 3d at 341.

### III. As implemented by the Department of Justice, the Federal Death Penalty Act is unconstitutionally applied disproportionately to black defendants accused of bank robbery and/or armored car offenses.

#### A. *The discriminatory impact of the FDPA renders it unconstitutional.*

As demonstrated below, the Federal Death Penalty Act is unconstitutional because it is applied disproportionately in bank/armored car robberies to black defendants accused of killing

non-black victims. Accordingly, this Court must strike the death penalty in this case due to racial discrimination and disproportionality pursuant to 18 U.S.C. § 3593(f) and 18 U.S.C. § 3595(c)(2)(A) and the Fifth, Sixth, and Eighth Amendments to the United States Constitution. Lilbear George, Curtis Johnson, and Chukwudi Ofomata are all African-American men. This case presents a clear danger that their race and/or the race of the victim influenced the decision to seek the death penalty or will influence the jury's ultimate decision. This force will be compounded in this case because the jury will faced with a *group* of black men. Numerous studies demonstrate that prejudice against black men increases exponentially when they are viewed collectively.

Racial disparities and tensions permeate the criminal justice system generally, but have grave and even more significance in the death penalty context. *See* Staff Of Sub-Comm. On Civil & Constitutional Rights of The H. Comm. On The Judiciary, 103d Cong., Racial Disparities In Federal Death Penalty Prosecutions 1988-94, reprinted in 140 Cong. Rec. S9588, 9588 (May 6, 1994) ("Race continues to plague the application of the death penalty in the United States. . . . On the federal level, cases selected have almost exclusively involved minority defendants."). Similarly, Supreme Court Justices Breyer and Ginsberg observed that race continues to play a role in the operation of the death penalty:

> Numerous studies, for example, have concluded that individuals accused of murdering white victims, as opposed to black or other minority victims, are more likely to receive the death penalty. . . . Fewer, but still many, studies have found that the gender of the defendant or the gender of the victim makes a not-otherwise-warranted difference.

*Glossip v. Gross*, 135 S. Ct. 2726, 2760-2761 (2015) (Breyer J., Ginsberg, J., dissenting) (questioning the constitutionality of capital punishment).

The former President of the United States Barack Obama also stated:

> [W]e know statistically that there is a racial bias that has been built

14

> into the death penalty . . . I've asked the Department of Justice [in
> addressing how to make the criminal justice system more fair] . . .
> to include examination of the death penalty.

The Marshall Project, Interview of President Obama, October 23, 2015, https://www.themarshallproject.org/2015/10/23/watch-obama-discuss-death-penalty-racial-profiling-with-the-marshall-project (last accessed February 14, 2019). Professor Rory Little, writing from the perspective of having served on Attorney General Reno's Capital Case Review Committee, noted that serious questions about regional and racial disparities had not been ameliorated by the administrative process within the Justice Department. Rory K. Little, *The Federal Death Penalty: History and Some Thoughts About the Department of Justice's Role*, 26 Fordham Urb. L.J. 347, 453 (1999). With the existence of these disparities and constitutional concerns, litigation and a hearing before this Court is appropriate.

Despite the efforts of the Department of Justice to eliminate racial influence in the administration of capital punishment, these disparities are longstanding. In 2001, then Assistant Attorney General Holder examined the federal death penalty's racial demographics and expressed concern over the racial and ethnic disparities in its application. *See* Marc Lacey & Raymond Bonner, *Reno Troubled by Death Penalty Statistics*, N.Y. Times, Sept. 12, 2000, https://www.nytimes.com/2000/09/13/us/reno-troubled-by-death-penalty-statistics.html. The numbers continue to reflect the same disparities that caused such concern ten years ago. Not only are African-Americans and minorities over-represented in the category of defendants authorized for federal capital prosecution, but African-Americans are over-represented in the category of defendants receiving the federal death penalty. Declaration of Kevin McNally Regarding the Geographic Location of Cases, the Frequency of Federal Death Sentences and the Race and Gender of Defendants and Victims, *United States v. Council*, No. 17-CR-866 (D. S.C. Sep. 18, 2018), ECF

No. 257-1 [hereinafter Council - Exhibit 1]. Two of the three defendants executed under the federal death penalty were people of color. *See* Death Penalty Information Center, *List of Prisoners*, Federal Death Row Prisoners, http://www.deathpenaltyinfo.org/federal-death-row-prisoners (last visited September 13, 2018). Timothy McVeigh, who killed 168 people and injured over 680 others, is the only white person to have been executed under the federal death penalty in the modern era. *Id*.

> B. *In the 30-plus year history of the modern federal death penalty, it has only been imposed for bank robbery/armored car offenses where the defendant is black and the victim non-black.*

FDPA is applied disproportionately to black defendants and in particular, in cases in which the victim is not black. This fact is clear upon even a cursory review of the history of capital authorization decisions, and the results of federal capital prosecutions in fatal bank and/or armored car robberies. In total there have been seven defendants who have received federal death sentences for bank robbery/armored car offenses.[22] Every single one is a black man convicted of killing a white victim.[23] That is, in the more than *thirty-year* history of the modern federal death penalty, it has *only* been imposed for bank robbery/armored car offenses where the defendant is black and the victim non-black.

No white defendant has *ever* been sentenced to death on federal bank robbery/armored car charges. Indeed, in stark contrast to the treatment of black defendants, only one white defendant has ever even been capitally *authorized* by the Department of Justice, Timothy O'Reilly. *United*

---

[22] Billy Jerome Allen and Norris Holder, *United States v. Holder et al*, No. 97-CR-141 (E.D. Mo.); Odell Corley, *United States v. Corley*, No. 02-CR-116 (N.D. In.); Robert Bolden Sr., *United States v. Bolden et al*, No. 02-CR-557 (E.D. Mo.); Daryl Lawrence, *United States v. Lawrence*, No. 05-CR-11 (S.D. Oh); John Johnson, *United States v. Johnson et al*, No. 04-CR-17 (E.D. La.) (death sentence overturned and authorization withdrawn); Brandon Council, *United States v. Council*, No. 17-CR-866 (D. SC.). *See also* Exhibit 2 - Closed Federal Capital Cases Involving a Bank Robbery or Armored Vehicle - June 11, 2018, *United States v. Council*, No. 17-CR-866 (D. S.C. Sep. 18, 2018), ECF No. 257-2 [hereinafter Council - Exhibit 2]

[23] *Id*.

*States v. O'Reilly et al*, No. 05-CR-80025 (E.D. Mi. Aug. 3, 2010), ECF No. 607).[24] Notably, Mr. O'Reilly was associated with an African American motorcycle club, and his co-defendants were all black. Mr. O'Reilly ultimately received a life sentence at trial. Consistent with this, as discussed above, the *only* two authorized capital cases in the Eastern District of Louisiana since 2005 have been groups of black men accused of bank robbery. These facts are statistically, and constitutionally significant.

In *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982), the Court insisted "that capital punishment be imposed fairly, and with reasonable consistency, or not at all." If the Federal Death Penalty Act [FDPA] were written to limit the use of the federal death penalty only to cases where non-black victims were murdered, or to only cases involving black defendants, the statute would be patently and facially unconstitutional. Alternatively, if the FDPA were written to require that, in deciding whether to seek the death penalty, greater weight should be accorded to seeking the death penalty where the victim was not black, or where the defendant was black, once again the unconstitutionality of the statue would be obvious. Or, if jurors were told that it was permissible to consider the murder of people who were not black as more serious than the murder of black people, once again the unconstitutionality of the statute would be plain.

In reality, the FDPA operates with a demonstrable racial effect. This practice, effect, and impact is reprehensible to the Constitution. Based on this effect, this Court should declare the FDPA unconstitutional because it violates the Equal Protection Clause of the Constitution and is arbitrary. Accordingly, this Court should bar the death penalty as a possible punishment in this case.

---

[24] For comparison, local prosecutors have obtained DOJ authorization to capitally prosecute 26 black men for bank/armored car robberies, out of 86 in which authorization was sought. *See* Council - Exhibit 2, *supra* n. 5.

IV.   **In the event this Court does not strike the death penalty in this case, the defendants request discovery and an evidentiary hearing regarding the issue of discrimination, proportionality, and/or arbitrariness to better submit the issue(s) to this Court.**

In *United States v. Bass*, 536 U.S. 862 (2002), the Supreme Court rejected discovery related to the issue of race and the Attorney General's selection of federal capital defendants, but it did so in a situation where the defendant was accused of the murder of a black person. This case is clearly distinguishable. First, it involves a non-black victim. Second, the defense here can, has, and does "submit relevant evidence that similarly situated persons were treated differently . . ." *Id*. Therefore, the defense should be "entitled to discovery." *Id*. The Court should order the prosecution to produce discovery regarding the decisions by the Attorney General to seek or not seek the death penalty. This is important so that, at the hearing, the defense may present evidence in mitigation of the prosecution's decisions to seek or not seek the death penalty, and jury decisions to impose or not impose death sentences. This evidence is otherwise admissible but particularly is so under 18 U.S.C § 3593(f), entitled "Special precaution to ensure against discrimination."

In several cases, district courts have granted motions for discovery on the issue at stake here: the possibility of racial discrimination in federal capital charging. In *United States v. Bradley*, 880 F. Supp. 271, 281 (M.D. Pa. 1994), the court issued a discovery order, admonished the parties to cooperate in expediting and simplifying the process, and stated that it would consider the government's privilege claims in camera, stating:

> [T]he court will allow the defense a short amount of time to obtain the discovery it seeks, and admonishes both sides to be as cooperative as possible so as to ensure that discovery is timely completed . . . The government contends that the material sought by Defendant is protected by the deliberative process privilege . . . . At this stage, the court is unable to determine whether the information sought by Defendant would fall within either the deliberative process or work-product categories. However, once the defense sets forth precisely what information it seeks, the court will permit the

> government to reassert these privileges. The court might then order
> an in camera review of the documents to determine if they truly fall
> within the parameters of these two doctrines.

880 F. Supp. 271, 281.

Likewise, in *United States v. Llera-Plaza*, 181 F.Supp.2d 414 (E.D. Pa. 2002), the district court ordered, and the prosecution provided, discovery of documents pertaining to other capital-eligible federal prosecutions in the Eastern District of Pennsylvania. After two motions for reconsideration and partial production of the requested documents, the district court ordered the government "to produce for the court, under seal for its in camera inspection, certain of the materials" covered by the earlier order, 181 F. Supp.2d at 418. In *United States v. Glover*, 43 F.Supp.2d 1217, 1234-35 (D. Kan. 1999), the district court issued a similar order. The evidence at the hearing will established that imposition of a death sentence in this case is like being struck by lightning.

Similarly, in order to preclude a death sentence on arbitrariness grounds and despite the findings made by other federal judges, the defendants believe the Court will need to receive evidence and make findings of fact regarding the constitutional issues raised in this motion. *Cf.*, *e.g.*, *Hidalgo v. Arizona*, 138 S. Ct. 1054, 1057 (2018) (Breyer, J., concurring in denial of certiorari) (explaining that questions regarding the failure of Arizona's capital sentencing scheme to genuinely narrow the class of death-eligible murder defendants were appropriate for an evidentiary hearing); *United States v. Armstrong*, 517 U.S. 456, 468 (1996) (acknowledging that discovery is available to allow a defendant to make out a claim of selective prosecution). Mr. George, Mr. Johnson, and Mr. Ofomata urge the Court to enter a preliminary order allowing discovery on these issues, and sufficient time to conduct necessary discovery in advance of any evidentiary hearing that the Court may convene.

**V.     Because the Federal Death Penalty Act does not contain a proportionality review provision, any death sentence imposed under it violates the Fifth and Eighth Amendments.**

Many of the issues identified above could be mitigated to some extent by a requirement of appellate proportionality review. Accordingly, the Federal Death Penalty Act ("FDPA") is unconstitutional in its failure to require a reviewing court to determine whether the punishment of death is excessive or disproportionate to the penalty imposed in similar cases, taking into consideration both the crime and the defendant. Indeed, were Mr. George, Mr. Johnson, and Mr. Ofomata tried on these charges in Louisiana state court, such proportionality review would be guaranteed by statute. *See* La. C. Cr. P. Art. 905.9 ("The Supreme Court of Louisiana shall review every sentence of death to determine if it is excessive."). That review requires the Louisiana Supreme Court, which mandatorily reviews all death cases, to consider "whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Reed*, 200 So. 3d 291, 334 (La. 2016).

The absence of a provision for proportionality review leaves the FDPA without a critical safeguard endorsed by the Supreme Court to avoid the arbitrary and capricious imposition of a death sentence. Numerous state capital statutes provide for comparative proportionality review. *See Pulley v. Harris*, 465 U.S. 37, 43 (1984). Even the Uniform Code of Military Justice requires it.[25] The requirement of proportionality review is grounded in the long-held and recognized "precept of justice that punishment for crime should be graduated and proportioned to offense." *Weems v. United States*, 217 U.S. 349, 367 (1910). The absence of comparative proportionality

---

[25] Death sentences imposed under the Uniform Code of Military Justice must also be reviewed using a comparative proportionality analysis. *See United States v. Curtis*, 32 M.J. 252, 270–271 (C.M.A. 1991).

review, or any comparable provision to guard against disproportionate sentences, renders the FDPA unconstitutional.

Comparative proportionality review requires an appellate court "to determine whether, considering both the crime and the defendant, the sentence is disproportionate to that imposed in similar cases." *Pulley*, 465 U.S. at 43–44. In *Pulley*, the Supreme Court found that California's capital statute had sufficient "checks on arbitrariness" because, among other things, the law required that the state supreme court not only review each death sentence but also determine whether the weight of the evidence supported it. 465 U.S. at 51–54. The Court relied in part on its earlier decision in *Jurek v. Texas*, 428 U.S. 262 (1976), upholding Texas's death-penalty law although it lacked comparative proportionality review. There, the Court had said that the provision for a mandatory appeal to "a court with a statewide jurisdiction" would "promote the evenhanded, rational, and consistent imposition of death sentences" and "assure that sentences of death will not be 'wantonly' or 'freakishly' imposed." *Id*. at 276.

But the FDPA does not provide for the court of appeals to review the relative weight of the aggravating and mitigating factors for a death sentence. And though a defendant sentenced to death has the right to appeal to one of eleven different courts of appeal, an appeal is not mandatory according to the one circuit that has addressed the issue. *See United States v. Hammer*, 226 F.3d 229, 236–37 (3rd Cir. 2000).[26] More important, even when appeals are taken, no court of nationwide jurisdiction considers each case. *See* 18 U.S.C. 3595. Rather, further appeal to the only

---

[26] Many district courts have likewise found that the FDPA does not provide for proportionality review. *See, e.g.*, *United States v. Williams*, No. S100CR.1008, 2004 WL 2980027, at *15 (S.D.N.Y. 2004); *United States v. Perez*, No. 3:02CR7, 2004 WL 935260, at *15–16 (D. Conn. 2004); *United States v. Frank*, 8 F. Supp. 2d 253, 272–73 (S.D.N.Y. 1998); *United States v. Briseno*, No. 2:11-cr-00077, 2015 WL 163526, at *3 (N.D. Ind. Jan 12, 2015); *United States v. Williams*, 18 F. Supp. 3d 1065, 1072–76 (D. Haw. 2014); *United States v. Montgomery*, No. 2:11- cr-20044, 2014 WL 1453527, at *15–16 (W.D. Tenn. 2014); *United States v. Hall*, No. 10-03029-02-CR-S-GAF, 2014 WL 1356698, at *11–12 (W.D. Mo. 2014).

court with nationwide appellate jurisdiction, the United States Supreme Court, is discretionary. *See* 28 U.S.C. § 1254. And it is virtually never granted: although more than 60 federal defendants in the modern era have been condemned to death, and three have been executed, the Supreme Court has granted plenary review in only one case. *See Jones v. United States*, 527 U.S. 373 (1999).

Such a non-mandatory, fragmented system cannot assure "evenhanded, rational and consistent imposition" of the federal death penalty across the circuits. Omitting any such review paradoxically leaves federal capital defendants with less protection than non-capital ones. *See Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (Constitution grants capital defendant greater protections in sentencing process because "[d]eath, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two").

In federal court, a kind of comparative proportionality review is a familiar component of ordinary sentencing under 18 U.S.C. § 3553(a)(6). That provision requires a sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See Kimbrough v. United States*, 552 U.S. 85, 108 (2007) ("district courts must take account of sentencing practices in other courts").

In the years since *Pulley*, moreover, the Supreme Court has embraced a form of proportionality review to "vindicate the underlying [Eighth Amendment] principle that the death penalty is reserved for a narrow category of crimes and offenders." *Roper v. Simmons*, 543 U.S. 551, 568–69 (2005). That review focuses on whether recent sentencing practices and other objective evidence of contemporary values indicate that capital punishment has become excessive for a given category of defendant or crime. *See Atkins v. Virginia*, 536 U.S. 304, 306, 311–12, 319 (2002) (the intellectually disabled); *Roper*, 543 U.S. at 560-69 (juveniles); *Kennedy v. Louisiana*, 554 U.S. 407, 421–27 (2008) (rape of a child). *See also Enmund v. Florida*, 458 U.S. 782, 794

(1982) (non-triggerperson in a felony murder); *Coker v. Georgia*, 433 U.S. 584, 596 (1977) (rape of an adult).

The majority of States heeded and respected the Supreme Court's decisions which held that the death penalty violates the Eighth Amendment if it is arbitrarily imposed[27] and, in response, incorporated comparative proportionality review into their statutory schemes. Yet the federal death penalty statutory scheme failed to institute such a safeguard, thereby rendering its imposition unconstitutionally arbitrary and capricious in violation of the Eighth Amendment.

**WHEREFORE**, for the foregoing reasons, and any others appearing to this Court, Mr. George, Mr. Johnson, and Mr. Ofomata respectfully request that this Court bar the death penalty in this case as unconstitutionally arbitrary, disproportionate, and discriminatory, or, in the alternative, hold the Federal Death Penalty Act unconstitutional as applied to Mr. George, Mr. Johnson, and Mr. Ofomata, or, in the alternative, order the discovery and evidentiary hearing requested to further prove the allegations set forth in this motion.

Respectfully submitted,

/s/ Bruce G. Whitaker
Bruce G. Whittaker, No. 08339
1215 Prytania Street, Suite 332
New Orleans, LA 70130
(504) 554-8674
bruce@whittakerlaw.com

/s/ Jerrod E. Thompson-Hicks
Jerrod E. Thompson-Hicks, No. 32729
Assistant Federal Public Defender

/s/ Ada A. Phleger
Ada A. Phleger, No. 32922
Research & Writing Specialist
500 Poydras Street, Suite 318
New Orleans, LA 70130
(504) 589-7931
jerrod_thompson-hicks@fd.org
ada_phleger@fd.org

---

[27] *See Gregg*, 428 U.S. at 187; *Proffitt v. Florida*, 428 U.S. 242, 247 (1976) (joint opinion of Stewart, J., Powell, J., and Stevens, J.); *Jurek*, 428 U.S. at 268 (1976) (joint opinion of Stewart, J., Powell, J., and Stevens, J.).

Counsel for Lilbear George

/s/ Ralph S. Whalen, Jr.

Ralph S. Whalen, Jr., No. 8319
2950 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3170
Telephone: (504) 525-1600
ralphswhalen@ralphswhalen.com

/s/ William P. Gibbens

William P. Gibbens, No. 27225
Ian Lewis Atkinson
SCHONEKAS, EVANS MCGOEY &
MCEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Fax: (504) 680-6051
billy@semmlaw.com
teva@semmlaw.com

Counsel for Curtis Johnson, Jr.

/s/ Frank G. Desalvo

Frank G. Desalvo, La. Bar No. 4898
FRANK G. DESALVO, APLC
739 Baronne Street
New Orleans, LA 70113
(504) 524-4191
frankd@fdesalvo.com

/s/ Michael P. Ciaccio

Michael P. Ciaccio, La. Bar. No. 21428
320 Huey P. Long Avenue
Gretna, Louisiana 70053
mpc@ciaccio-law.com

/s/ Sarah L. Ottinger

Sarah L. Ottinger, La. Bar No. 24589
Attorney at Law
2563 Bayou Road, Second Floor
New Orleans, Louisiana 70119
(504) 258-6537
sottinger1010@gmail.com

Counsel for Chukwudi Ofomata

### CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Ada A. Phleger
ADA A. PHLEGER
Research and Writing Specialist