UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 17-201** |
| **v.** | * | **SECTION: "I" (3)** |
| **LILBEAR GEORGE, et al.** | * | |

\* \* \*

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' JOINT
MOTION FOR CONTINUANCE OF TRIAL DUE TO ONGOING DEADLY
PUBLIC HEALTH CRISIS AND INCORPORATED MEMORANDUM (REC. DOC. 915)**

**NOW INTO COURT** comes the United States of America, represented herein by the undersigned Assistant United States Attorneys, now opposing the defendants' request for a one-year continuance of trial which is currently set to begin on September 14, 2020. While the government concedes that a continuance of the September trial may be necessary due to the federal and state restrictions implemented as a result of the COVID-19 pandemic – resulting in unexpected and unanticipated limitations to the defenses' trial preparations – a one-year continuance is unnecessary and unreasonable. The government objects to the trial being continued for a year.

**BACKGROUND**

The landscape of the COVID-19 pandemic and its effects on our country and state are surely well known to this Court, and are discussed at length in defendants' Motion for Continuance. (Rec. Doc. 915.) There is little need to rehash what is known to this Court – COVID–19 is a serious pandemic with serious medical consequences which all mankind currently faces. In order to stop the spread of this disease, the federal and state governments have implemented social distancing rules, resulting in government mandates which affected the criminal justice system. On April 27, 2020, Governor John Bel Edwards announced that on May 1, 2020,

Louisiana's stay-at-home order will be extended until May 15, 2020. *Gov. Edwards Will Extend Stay at Home Order Until May 15 to Continue Flattening the Curve and Slowing the Spread of Covid-19* (Apr. 27, 2020), https://gov.louisiana.gov./home-order-extended-may 15/. This extension means that the limitations defendants allege they face in traveling to interview witnesses and meeting with counsel, to name a few, will continue for this extended period.

To ignore the fact that some – not all – of defendants' basis for a continuance are legitimate would require the government to ignore rulings that have been made in the two other federal capital cases currently pending in the country that were scheduled for trial this year. In both cases, the Courts continued the trials in light of COVID-19. In *United States v. Saoipov*, 17-cr-0722, (S.D.N.Y. Apr. 3, 2020) (Rec. Doc. 324), the government did not oppose the defendant's request to continue the April 20, 2020 trial. On March 18, 2020, the Court continued the trial without date, and ordered parties to provide a joint letter on or before April 2, 2020, with an update on the case, including proposed trial dates. *Id.* The Court also stayed pretrial submissions. *Id*. The government is unaware of the current status of the rescheduled *Saoipov* trial. In *United States v. Smith*, No. 1600086 (D. Alaska, Mar. 24, 2020), the Court granted the defendant's request to continue the June 1, 2020 trial date. (Rec. Doc. 806.) The government opposed the defendant's request. (Rec. Doc. 785). In its March 24, 2020 Order (Rec. Doc. 806), the Court opined on its reasons for continuing the trial. In sum, the Court stated:

> Continuing trial in this matter is necessary in light of the defense's inability to adequately utilize the remaining months before trial due to the following: travel restrictions and limited flight availability; personal hazards for members of the defense team, their experts, and their families; limits on in-person access to Mr. Smith at FDC SeaTac by the defense team and experts; the inadequacy of trying to complete the last months of capital trial preparation with Mr. Smith over the phone, where such communications are often not private or confidential; and the overwhelming recommendations that people effectively shelter in place or, at a minimum practice 'social

2

> distancing.' The Court is not persuaded by the e-mail from the FDC SeaTac that Mr. Smith's defense team will be afforded adequate access to him in the last months preceding a capital trial. Nor is the Court persuaded that it would be prudent for the defense team to enter the SeaTac facility for in-person meetings with Mr. Smith in light of SeaTac's own decision that legal visitation should be suspended. . . . Legitimate sources uniformly predict that the COVID-19 pandemic will worsen in the next several months between now and the scheduled trial date.

*Id*. at 3. While the Court continued the trial and ordered that a status conference be held in mid–May, presumably to select a new trial date, the Court did not vacate all of the deadlines set forth in the Third Amended Scheduling Order. *Id*. at 4. The Court retained deadlines for proposed jury instructions, proposed voir dire and demonstrative aids, discovery deadlines, and oppositions and replies to oppositions. *Id*.[1]

In continuing the trial, the *Smith* Court noted that the time period of the continuance of trial would be excluded under the Speedy Trial Act, finding that the ends of justice served by the continuance outweighed the best interest of the public and the defendant's right to a speedy trial pursuant to 18 U.S.C. §§ 3161(h)(7)(A), (B)(i), and (B)(ii). *Id*. at 4. The Court also found that the delay in trial caused by the COVID-19 pandemic did not cause unreasonable delay for the purpose of the Crime Victims' Rights Act, pursuant to 18 U.S.C. § 3771(a)(7). *Id*.

With the *Saipov* and *Smith* decisions in mind, and in light of the effects of the COVID-19 virus in the Eastern District of Louisiana, the government understands that a continuance may be necessitated by the current circumstances all parties face. The circumstances, however, do not justify a continuance of one year, even with the COVID-19 pandemic and its effects on the criminal justice system.

---

[1] The Court noted that it would not prohibit the parties from seeking extensions of the deadlines should it become necessary.

## **LAW AND ARGUMENT**

As it relates to requests for continuances, the Fifth Circuit has held that it is in the trial court's sound discretion whether or not to grant a motion for continuance. *United States v. Rounds*, 749 F.3d 326, 336 (5th Cir. 2014). In reviewing denials of motions to continue, the Fifth Circuit will "not substitute [its] judgment concerning the necessity of a continuance for that of the district court" and "the judgment range [for such a decision] is exceedingly wide." *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000). Further, "[t]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling witnesses, lawyers, and jurors at the same place, at the same time, and this burden counsels against continuances except for compelling reasons." *Morris v. Slappy*, 461 U.S. 1, 11 (1983).

In *Thompson v. Davis*, 2017 WL 1092309, at *27 (5th Cir. 2017), Thompson argued that the trial court violated his rights in a capital case by denying his requests to postpone his trial. In *Thompson*, the Court noted that the Constitution guarantees inmates "a meaningful opportunity to present a complete defense." (citing *Crane v. Kentucky*, 476 U.S. 638, 690 (1986) (citations omitted)). Still not every denial of a continuance violates the Constitution. *Id.* The Court opined:

> The matter of granting a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Id.* As stated in *Thompson*, there is no mechanical test for deciding when a denial of a continuance is so arbitrary as to violate due process. *Id.*

The Government does not dispute the case law that states that defendants have the right to effective representation in a capital case. Defendants should expect that their counsel will conduct a thorough investigation in an effort to develop or learn about mitigating evidence. The cases cited by defendants, however, do not stand for the proposition that a defendant be given unfettered time to explore and investigate mitigation. Indeed, the cases cited by the defendant stand for instances in which the defense counsel failed to do proper investigations. The cases do not indicate that those failures were based on insufficient time granted by the Court. The cases do, however, require that defense counsel conduct a reasonable investigation. *Strickland v Washington*, 466 U.S. 668, 681 (1984) ("If counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective. Counsel may not exclude certain lines of defense for other than strategic reasons. Limitations of time and money, however, may force early strategic choices, often based solely on conversations with the defendant and a review of the prosecution's evidence. Those strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based. Thus, "when counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to employ at trial.")

"In the context of a capital sentencing proceeding, counsel's duty to investigate is not limitless. *Washington v. Strickland*, 673 F.2d 879, 894 (5th Cir. 1982), *aff'd in* 466 U.S. 668, 681 (1984). [C]ounsel for a criminal defendant is not required to pursue every path until it bears fruit in the form of a morsel of evidence in mitigation or until all conceivable hope withers. *Id*. citing *Lovett v. Florida*, 627 F.2d 706, 708 (5th Cir. 1980) . . . The purpose of the inquiry is to enable counsel to discover the kind of evidence in mitigation available and to make an informed and

reasonable evaluation with his client of the advisability of using such evidence. *Id.* If counsel's overall inquiry is sufficient for that purpose, then, insofar as the adequacy of his inquiry or investigation is concerned, he has been effective. *Id.*

The standard employed as it relates to the investigations conducted by defense counsel in capital cases, is not a question how much time is allotted or spent. The courts, instead, look to ensure that counsel's investigation was reasonable.

In *Martinez v. Quarterman*, 481 F.3d 249 (5th Cir. 2007), the defendant, post-trial in a capital case, filed a petition for federal habeas relief on the theory that he was denied effective assistance of counsel when his trial attorney decided to limit his investigation into his temporal lobe epilepsy as a possible mitigating factor during the penalty phase of the case. In denying the defendant's claim, the Court held that the defense counsel made reasonable professional judgment to limit their investigation into that aspect of the mitigating evidence. The Court further stated that "[T]o provide effective assistance in a capital case, the defense counsel need not fully investigate all mitigating evidence. *Id.* at 255. There are times when reasonable professional judgment supports limitations on investigations. Again, while the Court's decisions did not address the time that was given to defense counsel, it is important to note that the Court's holdings addressed the fact that the mitigation investigations must be reasonable.

Here, defendants argue that their Sixth Amendment right to effective counsel will be violated should this Court force defendants to trial in September 2020. Defendants provide a number of reasons where their investigation, and in effect, their effectiveness as counsel, will been impugned due to the limitations imposed by COVID-19. While some of the general concerns raised by defendants are legitimate (*i.e.*, counsel have alleged that they have been unable to visit their clients in person since the implementation of the March 22, 2020 Stay-At-Home Order;

counsel have been unable to travel to meet with certain local and out-of-state witnesses), some of what defendants argue goes beyond what is required for competent and effective representation. As set forth by the *Strickland* standard, counsel is required to be reasonable in the implementation of their defense strategy. "Counsel's investigation need only be reasonable under the circumstances, and in evaluating the reasonableness of counsel's efforts, we look at the quality of his overall inquiry into the availability of evidence in mitigation." *Strickland*, 673 F.2d at 894. What is reasonable is determined by the circumstances that a defendant faces in a particular case. As a result, guidelines, such as American Bar Association guidelines referenced by defendants cannot be the marker for what is required for effective representation. The guidelines, are indeed, mere guidelines to assist counsel in practice. The guidelines, however, are not law. The *Strickland* Court also addresses this issue:

> These basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4–1.1 to 4–8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. *See United States v. Decoster*, 624 F.2d 196, 208 (en banc), cert denied, 444 U.S. 944 (1979). Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.

*Id*. at 688–89. *Strickland* makes it clear that guidelines are merely advisory to counsel, but are only guides, not commandments meant to be exhausted. In this case, defendants refer to Guidelines 10.5 of the ABA Guidelines, which states in sum, that counsel should "engage in

7

interactive dialogue with the client concerning all matters that might reasonably be expected to have a material impact on the case." The guidelines do not state an exclusive manner in which that communication must be done. While the Guidelines do state that counsel should conduct in-person meetings with clients, ABA Guidelines, Supplementary 10.11A, nowhere does the guideline prohibit communications with clients via telephone or video conferencing. Indeed, during the COVID–19 pandemic, counsel in this case have conferred with their clients over the phone and utilized video conferencing, where it has been available.[2] While this may not be defendants' preferred method of communication, it is a method which is reasonable in communicating certain aspects of the investigation with defendants. The same is applicable as it relates to meeting with witnesses and conducting in-person interviews. Certainly, COVID–19 has crippled some aspects of communication, but has not eliminated all forms of communication, which are reasonable in light of the circumstances. Defendants offer no authority showing where a Court has deemed telephone conferences to be an ineffective form of communication.

    **I.**    *Defendants' inability to conduct in-person witness interviews does not necessitate a one-year continuance.*

In defendants' Motion, much is written about how COVID–19 has prevented defendants from preparing for trial. One area that defendants point to is their inability to interview an estimated 100 witnesses, collectively. While there is no dispute that in-person interviews may be preferred, it is not a requirement. As previously mentioned by the government, COVID–19 does not prevent communication with every possible witness whom defense may want to call at trial. The reasonable and prudent counsel will often have to conduct interviews via telephone or some

---

[2] See Rec. Doc. 916, at 8; Counsel for Johnson has utilized video-conferencing and conducted client meetings with Johnson via telephone.

8

other form of electronic means. This reason, alone, does not necessitate the need for a one-year continuance.

By their own admission, counsel have other cases to work on other than this capital case. As such, it is unlikely that prior to the COVID–19 pandemic that every possible witness would require or even be permitted an in-person meeting. Defendants offer no case law or other support showing where a lawyer has been found ineffective for choosing to conduct a witness interview over the phone, as opposed to in person. That is not to suggest that in-person interviews are not necessary – they are indeed. Nevertheless, in light of COVID–19, nothing has prohibited defendants from attempting to or interviewing witnesses by way of the telephone.

**II.** *Defendants' failure to obtain records does not necessitate a one-year continuance.*

The same can be said for the defendants' argument that COVID–19 prevents them from obtaining documents that they will need to present in mitigation. For example, George points to the fact that he has been unable to review certain criminal and civil records in person. Ofomata's counsel states that due to his Nigerian background, over 100 sets of "basic records" have yet to be ordered. Johnson also claims that he has been unable to access certain records as a result of COVID–19. In their Motion, defendants offer a myriad of reasons why they have not obtained some records, reasons which appear to have nothing to do with COVID–19. For instance, defendants allege that they have not received certain criminal and civil public records as a result of the December 2019 "cyberattack" that has caused the City of New Orleans to experience a possible loss of on-line records. Defendants do not offer any information about the records they are requesting. Indeed, defendants have been given their rap sheets in discovery. As it relates to Ofomata and George and the "Other Crimes Conducted" non-statutory aggravating factors alleged in the government's Notices of Intent and Second Amended Notice of Intent, respectively, (Rec.

9

Docs. 147, 148, 149, 393), the government has provided discovery including reports prepared by the New Orleans Police Department. Nevertheless, the COVID–19 pandemic is not a reason why defendants have been unable to obtain the records they allege to have requested.

The government can only assume that defendants requested the criminal, civil, and medical records they cite to needing, prior to COVID–19. This case was initially indicted in November 2017. (Rec. Doc. 1). In August 2018, the government filed its Notice of Intent to Seek the Death Penalty and Second Amended Notice of Intent (Rec. Docs. 147, 148, 149, 393.) In almost two years since receiving the government's notice, defendants have not received and/or have not requested records which they allege they intend to rely upon for mitigation. While it is undisputed that defendants' efforts to obtain certain records may have been impacted as a result of COVID–19, given that this case has been pending for almost three years, COVID–19 cannot be the sole reason that defendants have not obtained the records they allegedly need for trial and/or mitigation purposes.

### III. *Defendants' inability to meet with defendants in-person does not necessitate a continuance.*

As to defendants' argument that COVID–19 has impeded attorney-client meetings, the government does not dispute that defendants have been prevented from meeting with counsel in-person. Indeed, by March 23, 2020, many of the local facilities ceased inmate visits as a result of COVID–19. While counsel may have been unable to meet with defendants in-person, all of the facilities at which defendants are housed have either implemented or continued the practice of allowing inmates to confer with counsel via telephone conference. While the communications are recorded, the attorney-client privilege is not obviated. Defendants contend that this method is not preferred because the government has access to recorded telephone calls. Any suggestion that the government either directly or indirectly would have access to these privileged communications is

an unfounded basis to suggest a reason why defendants could not prepare for trial or discuss other facts of their case with their counsel during the COVID–19 pandemic. Indeed, the facilities at which defendants are housed have protocols in place to monitor privileged communications. This reason, alone, is insufficient and unreasonable to offer as a reason why attorney-client communications have been hampered as a result of COVID–19.

While defendants contends that ABA Guidelines require as many in-person meetings as possible, certainly, this is not the only way to prepare for trial and/or consult with a client. For example, all of the jails allow inmates to communicate with counsel via email. Additionally, St. Tammany Parish Jail where George is detained, as of April 27, 2020, permits video-conferencing which can be arranged through a program called Jailatm.com. The program is free of charge and permits privileged communications between a defendant and his/her counsel. While this program has not been available to George for the duration of the Stay-at-Home Order, it is only mentioned by way of example, to show that defendants have not been entirely incapable of communicating with defense counsel – although it appears defendants concede that they can communicate with counsel, just not by the method they prefer. (Rec. Doc. 915, at 8.)

In their Motion, defendants allege varying degrees of client communication. George alleges that on April 22, 2020, his "defense team [was] unable to engage in confidential legal communications with him via email or phone," seemingly due to a protocol implemented by the jail to limit the movement of inmates in response to COVID–19 guidelines. During the April 7, 2020 telephone conference with the Court (Rec. Doc. 900), the Court informed counsel that the Court would assist to facilitate attorney-client meetings at counsels' request. Counsel for George did not state experiencing any problems in communicating with George at that time. The government is unaware of any attempts made by counsel for George since the Court's offer on

April 7, 2020, to assist counsel in communicating with their client. Counsel for Ofomata and George point to the fact that they have communicated with their clients, just not in a preferable manner (Rec. Doc. 915, at 8.)

The government does not dispute that in-person meetings are a preferred method of communication, but to the extent that in-person meetings have been prohibited by the jail facilities in light of COVID–19, defendants are still able to communicate with counsel. Any suggestion to the Court that a continuance of one year is necessary because counsel could not communicate with defendants, should be denied for that reason.

Additionally, defendants fail to cite any cases showing where a Court has found an attorney ineffective for meeting with a client for a brief period of time either via telephone or video-conferencing. For this reason, defendants' Motion should be denied.

### IV. *The government has complied with the rules of discovery and has provided defendants with discovery timely.*

Defendants allege that the government's discovery process necessitates the need for a one-year continuance. This basis is wholly without merit. The government has tendered 21 discovery productions to defendant consisting of 43,598 items. The government has acquiesced to nearly every request that defendants have made to satisfy discovery requests. In addition to tendering the aforementioned discovery, the government provided a two-day review of evidence stored at the New Orleans FBI Field Office. Despite making every effort to comply with discovery, including providing discovery for the allegations against the defendants in the government's Notices of Intent, defendants continue to create discovery issues. For example, on April 24, 2020, defendant George filed a Second Motion to Compel Production of DNA Evidence (Rec. Doc. 914). In sum, George claims that the government has not provided him with discovery of the DNA analysis conducted by the Louisiana State Police Crime Laboratory. This exact argument was raised by

12

George in his first motion filed on July 15, 2019 (Rec. Doc. 422). At the hearing, the government represented that the government tendered the *complete* Louisiana State Police DNA file. On July 31, 2019, the Court denied defendant's Motion. (Rec. Doc. 466). Nine months later, defendant is regurgitating the exact argument when nothing has changed about the government's position. In addition to representations made by the government, counsel for George has personally spoken with the DNA analysts in this matter who have also told counsel that George has the entirety of the case file and that the information contained in the file is sufficient for any defense expert to review and analyze. Additionally, defendant has been told that the laboratory retains a sample of the profiles should defendant want to conduct his own DNA testing. Yet, more time was expended by counsel for George to file yet another motion, seeking to compel a production that is complete.

George is not alone in this discovery practice. On March 27, 2020 counsel for Ofomata sent the government 4 separate discovery letters. Many of the letters acknowledge what has been given by the government, followed by a request for confirmation by the government that what was tendered is, in fact, a complete production. Another request serves as the prime example of what has been occurring throughout this litigation. Defendant's find a reference in a report which leads to an endless number of requests that are totally unrelated or irrelevant. With every document that the government tenders, defendants find some way to ask multiple follow up questions. Additionally, many of Ofomata's requests are protected under the *Jencks* Act.

While the government understands the need for complete discovery, the process as it has been utilized in this case has been borderline abusive and certainly unnecessary. Most importantly, certain aspects of the process has amounted to nothing more than a waste of time. For every legitimate discovery issue, there have been many more requests that have been wholly irrelevant that has consumed defendants and certainly the government's time. Because this consumption of

time has largely - not entirely - been a creation of defendants, it is inaccurate to suggest that the government is responsible for any delays attributable to the discovery practice.

### V. *Government's proposed relief*

There is little dispute that COVID–19 has changed the landscape of the world in ways that are still unknown. The Court has effectively responded by implementing orders that seek to protect defendants and the general public. Fairness to all parties is surely a part of the Court's consideration. To that end, the government is not objecting to defendants' request for a continuation of the September trial because the government desires defendants to have a fair trial, which includes adequate time to sufficiently and effectively prepare for trial. A brief continuance of the trial should assure that all of the reasons raised by defendants to continue trial will have been cured. Obviously, neither defendants nor the government can know what that state of the Eastern District of Louisiana will be in light of the COVID–19 pandemic. However, the state of Louisiana is currently on track to lift the Stay-at-Home Order on May 16, 2020, and move to Phase 1 of the White House criteria.[3]

The two federal capital trials that were set to go to trial this year have been continued do to the COVID–19 pandemic.[4] In light of those rulings, and the concerns expressed by defendants in this case, the government does not oppose defendants' request to continue the September 14,

---

[3] On April 27, 2020, Gov. John Bel Edwards announced that Louisiana's Stay-at-Home Order will extend until May 15, 2020 to slow the spread of COVID-19. "Hopefully, Louisiana will meet the White House criteria and move to Phase 1 on May 15, provided symptoms, new case counts and hospitalizations decrease and the state continues to surge testing and contact tracing capacity. Phase 1 lifts the Stay at Home order and eases restrictions on some public spaces like houses of worship and restaurants and opens other businesses that have been closed such as barber shops and salons, but with restrictions on occupancy and strict requirements for personal distancing and masks to keep everyone safe. Phase One occupancy for these businesses will be limited to 25 percent." https://gov.louisiana.gov./home-order-extended-may 15/.

[4] *United States v. Saoipov*, 17-cr-0722, (S.D.N.Y. Apr. 3, 2020); *United States v. Smith*, No. 1600086 (D. Alaska, Mar. 24, 2020).

2020 trial. The government, however, does have concerns about a continuance of trial.[5] This case has already been tried, with counsel for defendants appearing daily to observe witnesses, their families, and the victim's family. These individuals' identities, including the governments' cooperators, are known to defendants. The witnesses called in the first trial are essential witness whom the government intends to call as witnesses at defendants' trial. Given the fact that some of the government's witnesses expressed safety concerns prior to and after trial, any unnecessary delay of trial does nothing but exacerbate concerns for witness safety. This Court had an opportunity to observe the government's witnesses. More than one witness was fearful of testifying during trial. The Court had to admonish some witnesses multiple times to speak into the microphone and face the jury. Those same witnesses will be asked to return for a second trial, over a year later, where they will be subject to cross-examination by counsel who have had over a year to comb over their prior trial testimony and robustly cross-examine them about an incident dating back to 2013, which they testified about over a year ago. The longer an impending trial looms, the more anxious and concerned these witnesses become about the trial process and their safety.

As mentioned, this incident occurred in 2013. Witnesses for the government and defendants will be asked to testify about an incident and the aftermath of that incident, events that occurred approximately seven years ago. This time delay assists neither the government, nor defendants' right to a fair trial, because it is inevitable that memories of all witnesses will fade over time. For this reason, all parties should be concerned about the realities of a deferred trial.

---

[5] While the government has stated its intention to supersede the Second Superseding Indictment as it pertains to defendant Ofomata only, for the purpose of making a non-substantive amendment to the Notice of Special Findings, the government contends that superseding would not necessitate a continuance of the September 14, 2020 trial. Additionally, while the defendants' Motion to Continue addresses "settlement negotiations," the government will not address that issue in its response in order to ensure that the Court is not made privy to any discussions of same.

The government's concern also extends to the victim's family. A prolonged period of delay is unfair to the family, who have already endured one trial. This family has been living with this tragedy since 2013 and are deserved of closure and a final resolution to this chapter of their lives as well. Therefore, the government would ask the Court to consider this reason, and the other aforementioned reasons, in considering the necessity of a one-year continuance as defendants' request.

The COVID–19 pandemic, while serious, cannot be wholly blamed for the entirety of problems and impediments defendants allege in their Motion. While some delay can be attributed to the government restrictions implemented in response to COVID–19, a request for a one-year continuance is unreasonable for what appears to be a "shut-down" of operations for a period of two months, beginning March 22, 2020[6] with an anticipated ending of May 15, 2020.[7] The government has pointed to all the reasons why it believes defense counsel are able to provide effective representation to the defendants in compliance with the Sixth Amendment. Any delays attributable to either defendants' desire to exhaust every defense theory – no matter how unreasonable – or delays attributable to defendants' misuse of the almost three years that they have had to investigate this case, should not be attributed to the COVID–19 pandemic.

While the government opposes a one-year trial continuance, it believes that a continuance of trial to January 2021 is not unreasonable in light of the COVID–19 pandemic and its impact on defendants' ability to investigate their cases. Should the Court grant defendants' request for a continuance and adopt the government's proposed trial date, the government believes that this

---

[6] On March 22, 2020, Gov. John Bel Edwards issued a Stay at Home Order, directing all Louisiana residents to shelter at home and limit movements outside their homes beyond essential needs. Proclamation No. 33 JBE 2020 (Mar. 22, 2020).

[7] On April 27, 2020, Gov. John Bel Edwards announced that Louisiana's Stay-at-Home Order will extend until May 15, 2020 to slow the spread of COVID-19. At this time, Louisiana does not currently meet the White House criteria for entering Phase One of reopening. https://gov.louisiana.gov./home-order-extended-may 15/.

additional time should be more than sufficient for defendants to prepare for trial and recoup any investigative time lost as a result of the COVID–19 restrictions implemented by the federal and state governments.

Additionally, should the Court grant defendants' Motion, the government requests the time period of the continuance of trial be excluded under the Speedy Trial Act, with a finding that the ends of justice served by the continuance outweighs the best interest of the public and the defendant's right to a speedy trial pursuant to 18 U.S.C. §§ 3161(h)(7)(A), (B)(i), and (B)(ii).

        Respectfully submitted,

        PETER G. STRASSER
        UNITED STATES ATTORNEY

        *s/ Brittany L. Reed*
        BRITTANY L. REED
        Assistant United States Attorney
        Louisiana Bar Roll Number 31299
        Email:  Brittany.Reed2@usdoj.gov
        650 Poydras Street, Suite 1600
        New Orleans, Louisiana  70130
        Telephone: (504) 680-3000

        *s/ Gregory M. Kennedy*
        GREGORY M. KENNEDY
        Assistant United States Attorney
        Senior Litigation Counsel
        Louisiana Bar Roll Number 20896
        Email:  Greg.Kennedy@usdoj.gov
        650 Poydras Street, Suite 1600
        New Orleans, Louisiana  70130
        Telephone: (504) 680-3000

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 28, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel for defendant.

                                                 *s/ Brittany L. Reed*
                                                 BRITTANY L. REED
                                                 Assistant United States Attorney