## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                                        No. 17-201

LILBEAR GEORGE,                                    SECTION I
CURTIS JOHNSON, JR.,
& CHUKWUDI OFOMATA

### ORDER & REASONS

Before the Court are six motions[1] filed by the government to exclude certain evidence, argument, or instruction during any penalty phase proceedings of defendants Lilbear George ("George"), Curtis Johnson, Jr. ("Johnson"), and Chukwudi Ofomata's ("Ofomata") (collectively, the "defendants") capital trial. The defendants oppose each of the government's motions.[2] For the following reasons, the government's motions are granted, denied, and/or dismissed without prejudice.

### I.

The allegations in the second superseding indictment are familiar to the Court.[3] On August 31, 2018, the government filed its notices of intent to seek the death penalty as to George, Johnson, and Ofomata.[4] Each notice of intent states that

---

[1] R. Doc. Nos. 926, 928–932.
[2] R. Doc. Nos. 938–43.
[3] *See generally* R. Doc. No. 237.
[4] *See* R. Doc. Nos. 147–149. The government filed its amended notice of intent to seek the death penalty as to George on June 19, 2019, and its second amended notice of intent to seek the death penalty as to George on July 1, 2019. *See* R Doc. Nos. 393 & 409.

the government "believes the circumstances of the offenses charged in Count 3 of the Superseding Indictment are such that in the event of a conviction, a sentence of death is justified . . . , and that [the government] will seek the sentence of death for this offense."[5] Count three alleges that the defendants, along with codefendants Jeremy Esteves and Robert Brumfield, III, "aiding and abetting each other, did knowingly use, carry, brandish, and discharge firearms during and in relation to crimes of violence . . . , and in the course thereof caused the death of Hector Trochez through the use of firearms," and that the killing is murder in that the murder was committed in perpetration of a robbery affecting commerce.[6]

Under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591–3598, "conviction of an offense punishable by death is followed by a separate sentencing hearing which involves both an eligibility and selection phase." *United States v. Ebron*, 683 F.3d 105, 149 (5th Cir. 2012). To render a defendant eligible for the death penalty, the government must prove beyond a reasonable doubt one of four mental states, also known as statutory intent factors, provided in § 3591(a)(2) and at least one of sixteen statutory aggravating factors provided in § 3592(c). *United States v. Bourgeois*, 423 F.3d 501, 506–07 (5th Cir. 2005).[7]

---

[5] R. Doc. No. 148, at 1; R. Doc. No. 149, at 1; R. Doc. No. 409, at 1. The government filed its second superseding indictment on February 7, 2019. *See* R. Doc. No. 237. No material changes were made to count three. *Compare* R. Doc. No. 23, at 3, *with* R. Doc. No. 237, at 3.

[6] R. Doc. No. 237, at 3.

[7] The government must also prove that the defendant was not younger than 18 years of age at the time of the offense. 18 U.S.C. § 3591(a).

2

Once the defendant becomes eligible for the death penalty, the selection phase begins, during which the government may attempt to prove the existence of additional factors in support of its position that the death penalty should be imposed. *See* § 3593(c). Similarly, the defendant may attempt to prove the existence of mitigating factors to dissuade the sentencing jury from recommending a death sentence. *Id.* The jury then weighs the proven aggravating factors against any proven mitigating factors in order to determine if a death sentence is appropriate. § 3593(e).

## II.

The government moves the Court to preclude: evidence of unsworn allocutions before any capital jury,[8] evidence or argument concerning residual doubt,[9] argument or instruction that the beyond a reasonable doubt standard applies to penalty phase weighing,[10] argument of execution impact evidence and proportionality evidence,[11] evidence or argument concerning a mercy instruction,[12] and evidence or argument concerning prison conditions generally.[13] The Court will consider each motion in turn.

### A. Unsworn Allocution

A statement of allocution is "[a]n unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy,

---

[8] R. Doc. No. 926.
[9] R. Doc. No. 928.
[10] R. Doc. No. 929.
[11] R. Doc. No. 930.
[12] R. Doc. No. 931.
[13] R. Doc. No. 932.

explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence." *United States v. Jackson*, 549 F.3d 963, 980 n.22 (5th Cir. 2008) (internal quotation marks and citation omitted).

The government moves to preclude the defendants from making any unsworn statements before the jury during the penalty phase because Fifth Circuit precedent establishes that capital defendants have no constitutional or statutory right to allocute before the jury.[14] The government further argues that any allocution should be excluded because its probative value is outweighed by the danger of creating unfair prejudice due to its lack of reliability.[15] Moreover, the government asserts, permitting the defendants to make unsworn and unexamined statements would deny the jury essential information necessary for the determination of credibility.[16]

The defendants argue in opposition that, like all other criminal defendants, they have a constitutional, common law, and statutory right to allocute, and that even if no such right exists, the FDPA grants the Court the discretion to permit allocution.[17]

Specifically, the defendants point to Federal Rule of Criminal Procedure 32, which provides, in pertinent part, that before imposing a defendant's sentence, the Court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P.

---

[14] R. Doc. No. 926-1, at 4.
[15] *Id.* at 2–3.
[16] *Id.* at 3.
[17] R. Doc. No. 939, at 2.

32(i)(4)(A)(ii).[18]  The defendants contend that for allocution to serve its purposes of tempering punishment with mercy and ensuring individualized sentencing, the defendants must be allowed to address the sentencer, in this case, the jury, *before* the jury deliberates their sentences.[19]  To hold otherwise, and to permit allocution only after the jury deliberates, the defendants assert, would be an "empty formality" that would not satisfy due process because it could have "no mitigating effect."[20]

The defendants argue that the FDPA also provides them with the right to allocute before the jury.[21]  Pursuant to 18 U.S.C. § 3593, a defendant may present "any information relevant to a mitigating factor" and, therefore, the defendants conclude, they should each be allowed to offer an unsworn, un-cross-examined statement to the jury as evidence relevant to mitigation.[22]  The defendants assert that any danger of unfair prejudice may be cured with a limiting instruction reminding the jurors that they should carefully consider the credibility of such statements, considering that they are not sworn or subject to cross-examination.[23]

The defendants acknowledge that Fifth Circuit precedent establishes that a capital defendant does not have an *unconditional* right to allocute, but they argue that nothing forbids the Court from exercising its discretion to allow the defendants to allocute *with conditions*, such as by providing an instruction to the jury regarding

---

[18] *Id.* at 2–3.
[19] *Id.* at 3.
[20] *Id.* at 5, 8.
[21] *Id.* at 5.
[22] *Id.*
[23] *Id.*

the nature of allocution, as previously discussed; limiting the timing of allocution;[24] requiring the defendants to remain at the defense table; and providing the Court and government with advance notice as to whether one or more of the defendants intends to allocute and the contents of their statements.[25]

Fifth Circuit precedent clearly establishes that "a criminal defendant in a capital case does not possess a constitutional right to make an unsworn statement of remorse before the jury that is not subject to cross-examination." *Jackson*, 549 F.3d at 980 (quoting *United States v. Hall,* 152 F.3d 381, 396 (5th Cir.1998), *abrogated on other grounds by United States v. Martinez–Salazar,* 528 U.S. 304 (2000)).

In *Hall*, the Fifth Circuit also held that a capital defendant has no right under Rule 32, the FDPA, or common law to allocute before the jury prior to the jury's deliberations. 152 F.3d at 391–95. The court found that the district court complied with the plain language of Rule 32 by inquiring of the defendant whether he wished to make a statement before it announced his sentence, and it held that "[t]he text of the rule provides no basis for concluding that the defendant has a right to make a statement to the jury prior to the jury's arriving at its sentencing recommendation." *Id*. at 392. As the court explained:

> [Section] 3593(c) counsels against construing Rule 32[(i)(4)(A)(ii)] as establishing an unconditional right for the defendant to make an unsworn statement of remorse to the jury. . . . Construing [the rule] as granting a defendant the unconditional right to make an unsworn statement of remorse to the jury would contravene § 3593's mandate that the district court exercise discretion in determining whether to

---

[24] The Court assumes that this means placing a time limit on each defendant's unsworn statement.
[25] *Id*. at 9–10.

exclude any information offered by the parties on the basis that its probative value "is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." . . . Construing Rule 32[(i)(4)(A)(ii)] as creating a per se right to make an unsworn statement of remorse to the jury that is not subject to cross-examination would in no sense increase the accuracy and reliability of the capital-sentencing process.   When the district court receives a statement in allocution, it recognizes the legal effect of the fact that the statements are not sworn and the attendant potential effect of this fact upon the credibility of the defendant's statements; the same cannot be said for a jury.

*Id*. at 392–93 (quoting 18 U.S.C. § 3593(c)).

*Hall* rejected the argument that only permitting defendants to allocute after the jury arrives at its sentencing recommendation "render[s] allocution an empty gesture because the district court has no discretion to disregard the jury's recommendation."  *Id*.  The court noted that other circumstances exist in which allocution is "equally devoid of practical impact," such as when the statutory mandatory minimum sentence for a particular offense exceeds the maximum sentence under the otherwise applicable U.S. Sentencing Guidelines range.  *Id*.

*Hall* declined to express an opinion as to whether the district court could have properly exercised its discretion to allow the defendant to allocute before the jury deliberated its sentencing recommendation.  *Id*. at 393 n.6.  As the defendants recognize, the FDPA provides that "[t]he defendant may present any information relevant to a mitigating factor," 18 U.S.C. § 3593(c), and some courts have exercised their discretion to permit defendants to allocute before the jury as information relevant to mitigation. *See, e.g.*, *United States v. Wilson,* 493 F. Supp. 2d 509, 510–11 (E.D.N.Y. 2007) (permitting allocution); *United States v. Henderson,* 485 F. Supp. 2d

831, 846 (S.D. Ohio 2007) (same); *see also United States v. Lawrence*, 735 F.3d 385, 408 (6th Cir. 2013) ("[A]lthough the FDPA does not mention allocution, the probative value of the sound of the defendant's own voice, explaining his conduct and subsequent remorse in his own words, as information relevant to mitigation, can hardly be gainsaid.") (citation omitted).

Assuming, *arguendo*, that the FDPA permits the defendants to allocute before the jury prior to the jury's sentencing deliberations, a finding this Court declines to make, the relevant inquiry is whether the probative value of the defendants' allocutions would be outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. *See* 18 U.S.C. § 3593(c). The *Hall* Court, assuming, without deciding, that an unsworn statement such as the one proffered by the defendant was theoretically admissible during an FDPA sentencing hearing, held that the district court did not abuse its discretion in declining to admit the defendant's unsworn statement:

> The district court could properly conclude that the danger that [the defendant's] unsworn, uncross-examinable testimony would mislead the jury outweighed the probative value of the information conveyed in the testimony, particularly given the fact that such information was readily available in a superior form: [the defendant's] sworn testimony, which would have been subject to testing for truthfulness and accuracy through cross-examination by the government.

152 F.3d at 397–98.

The Court similarly concludes that the danger that the defendants' allocutions would mislead the jury outweighs any probative value that the defendants' unsworn statements may possess. *See* 18 U.S.C. § 3593(c). None of the conditions that the

defendants propose would militate against this risk so as to render the probative value of the statements greater than the danger of misleading the jury. The defendants will have the opportunity to testify before the jury, under oath, during the penalty phase. Accordingly, the Court will grant the government's motion.

### B. Residual Doubt

The government moves the Court to deny a residual doubt instruction, a right to present argument relative to residual doubt, and a right to present residual doubt as a mitigating factor during voir dire or the penalty phase.[26] "Residual doubt" has been defined as "a lingering uncertainty about facts, a state of mind that exists somewhere between 'beyond a reasonable doubt' and 'absolute certainty.'" *Franklin v. Lynaugh*, 487 U.S. 164, 188 (1988) (plurality opinion) (O'Connor, J., concurring in judgment).

The government notes that while the Eighth and Fourteenth Amendments of the U.S. Constitution require that the sentencer not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death, *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982), a plurality of the

---

[26] R. Doc. No. 928. Both parties throughout their briefs refer to the concept of "residual doubt" in the form of a jury instruction, argument, and mitigating factor, without differentiating between the permissibility of each. Caselaw on the subject similarly does not treat the admissibility of the concept of residual doubt differently based upon the context in which it is introduced to the jury. Therefore, when the Court refers to "residual doubt," it is referring to residual doubt in the context of all three forms—instruction, argument, and mitigating factor—regardless of whether all three forms are specified.

Supreme Court, as well as the Fifth Circuit, have declined to require residual doubt instructions.[27]

Furthermore, the government argues, residual doubt mitigators are not authorized by the FDPA.[28]  Residual doubt is not one of the seven mitigators provided in 18 U.S.C. § 3592(a)(1)–(7), and, the government asserts, the FDPA's "catch-all" mitigator does not reach residual doubt.[29]  The catch-all provision set forth in § 3592(a)(8) encompasses "[o]ther factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." Relying on *Franklin*, 487 U.S. at 174, which stated that "lingering doubts are not over any aspect of petitioner's 'character,' 'record,' or a 'circumstance of the offense,'" the government reasons that residual doubt is not the type of non-statutory mitigating evidence authorized by § 3592(a).[30]  The government recognizes that the court in *United States v. Davis*, 132 F. Supp. 2d 455, 468 (E.D. La. 2001) (Berrigan, J.), permitted a residual doubt instruction, but it argues that *Davis* is distinguishable from the case at hand because in *Davis*, the defendant was being re-sentenced by a sentencing jury that was different from the original jury that determined guilt.[31]

The defendants rely on *Davis* and several other district court cases which found textual support in § 3592(a) for finding that residual doubt was an appropriate

---

[27] R. Doc. No. 928-1, at 1–2.
[28] *Id*. at 4.
[29] *Id*.
[30] *Id*.
[31] *Id*. at 5.

mitigating factor.[32]  The defendants urge the Court to follow those courts that have identified residual doubt as a potential mitigating factor or, alternatively, to deny the government's motion as premature because the Court will be in a better position to evaluate the appropriateness of submitting residual doubt as a mitigating factor after it hears all of the evidence presented during the guilt phase of the trial.[33]

*i.*

Neither the Supreme Court nor the Fifth Circuit has held that a capital defendant has a constitutional right to an instruction that the jury should consider residual doubt, a right to present argument with respect to residual doubt, or a right to present residual doubt as a mitigating factor. As the Supreme Court stated in *Franklin*:

> Our edict that, in a capital case, the sentencer . . . may not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense, . . . in no way mandates reconsideration by capital juries, in the sentencing phase, of their "residual doubts" over a defendant's guilt. Such lingering doubts are not over any aspect of petitioner's "character," "record," or a "circumstance of the offense." This Court's prior decisions, as we understand them, fail to recognize a constitutional right to have such doubts considered as a mitigating factor. Most importantly, even if we were inclined to discern such a right in the Eighth Amendment, we would not find any violation of it *in this case.*

487 U.S. at 174 (internal quotation marks and citations omitted); *see also Oregon v. Guzek*, 546 U.S. 517, 523–25 (2006) (recognizing that the Supreme Court's prior decisions "had *not* interpreted the Eighth Amendment as providing a capital

---

[32] R. Doc. No. 942, at 2–3.
[33] *Id.* at 3.

defendant the right to introduce at sentencing evidence designed to cast 'residual doubt' on his guilt of the basic crime of conviction," but finding it unnecessary to resolve the issue of whether such a right exists because, even if it did, it could not extend so far as to provide the defendant with a right to introduce evidence during his sentencing hearing in support of his alibi defense that he did not introduce during the guilt phase); *United States v. Jackson*, 549 F.3d 963, 981 (5th Cir. 2008) (holding that the defendant was "not constitutionally entitled to instruct the jury to consider . . . residual doubt," and even if he was entitled to "some right to consideration of residual doubt, . . . the court explicitly instructed the jury that it could consider '[a]ny other [factors] you may find from the evidence' and 'anything else about the commission of the crime . . . that would mitigate against imposition of the death penalty'").

Because neither the Supreme Court nor the Fifth Circuit has found that a defendant has a constitutional right to a residual doubt instruction, any entitlement to this instruction must come from the FDPA. Jurisprudence on the question of whether the FDPA requires or provides a district court with discretion to allow a residual doubt instruction or argument is far from uniform. For example, *Davis* held that a residual doubt argument is not only permissible under 18 U.S.C. § 3592, but also that such an argument "*must* be considered by the jury if offered by the defense." 132 F. Supp. 2d at 468 (emphasis added); *see also United States v. Honken*, 378 F. Supp. 2d 1040, 1041 (N.D. Iowa 2004) (adopting *Davis*'s reasoning and holding that the defendant would be permitted to raise the issue of residual doubt during the

penalty phase and that the court would include a residual doubt instruction to the jury).

Other courts have held that the FDPA does not entitle a defendant to a residual doubt instruction, but that the statute provides district courts with the discretion to allow such an instruction. *See, e.g., United States v. Jones*, No. 10-03090, 2017 WL 4117906, at *2 (W.D. Mo. Sept. 15, 2017) ("[A]s the law currently stands, even if the Court is authorized to give such an instruction, it is certainly not required to do so upon request.") (citation omitted); *United States v. Bodkins*, No. 04-70083, 2005 WL 1118158, at *9 (W.D. Va. May 11, 2005) ("Whether the court decides to give a jury instruction on residual doubt may depend on whether the evidence presented at trial is adequate to provide a reasonable person with residual doubt of the defendants' guilt, should they be found guilty beyond a reasonable doubt.").

Still other courts have held that the FDPA forbids argument or instruction on residual doubt. *See, e.g., United States v. Eye*, No. 05-344, 2008 WL 2121011, at *2 (W.D. Mo. May 19, 2008) (analyzing the history of the FDPA and concluding that Congress intended the catch-all category to include every mitigating factor constitutionally required but nothing beyond those constitutional bounds and that, therefore, "the FDPA does not permit a jury to be instructed that it can consider residual doubt of guilt when determining an appropriate sentence"); *United States v. McCluskey*, No. 10-2734, 2013 WL 12329928, at *3 (D.N.M. July 15, 2013) (holding that the FDPA does not permit the court to allow instruction or argument on residual doubt).

13

*ii.*

The Court respectfully disagrees with *Davis*'s reasoning. *Davis*'s statements with respect to the degree of certainty needed to sentence a defendant to death imply that "absolute certainty" of guilt is required in a capital case, rather than guilt beyond a reasonable doubt. Neither the Fifth Circuit nor the Supreme Court has ever indicated that the government must satisfy a higher burden of proof in a capital case than in a non-capital criminal case. Furthermore, as one district court has recognized:

> Under the system envisioned by the *Davis* court . . . a capital defendant is found guilty twice: first in the guilt phase and then if the defendant desires, the jury can revisit his guilt in the sentencing phase. The Supreme Court has never required this two-stage guilt determination and Congress did not so provide in the FDPA.

*United States v. Caro*, 483 F. Supp. 2d 513, 519 n.7 (W.D. Va. 2007), *aff'd,* 597 F.3d 608 (4th Cir. 2010); *see also United States v. Taylor*, 583 F. Supp. 2d 923, 934–35 (E.D. Tenn. 2008), *aff'd,* 814 F.3d 340 (6th Cir. 2016), *abrogated on other grounds by United States v. Richardson*, 948 F.3d 733 (6th Cir. 2020) (disagreeing with *Davis*'s holding after applying traditional tools of statutory construction and concluding that residual doubt is not a proper mitigating factor because it is not "in line with the seven enumerated factors and the description of 'Other factors' contained in the statute").

The Court finds the Eighth Circuit's reasoning in *United States v. Rodriguez*, 581 F.3d 775, 815–16 (8th Cir. 2009), relied upon by the government, convincing. *Rodriguez* declined to recognize the right to a residual doubt instruction under the

FDPA based upon Justice O'Connor's concurring opinion in *Franklin,* joined by Justice Blackmun:

> Our decisions mandating jury consideration of mitigating circumstances provide no support for petitioner's claim because "residual doubt" about guilt is not a mitigating circumstance. We have defined mitigating circumstances as facts about the defendant's character or background, or the circumstances of the particular offense, that may call for a penalty less than death. "Residual doubt" is not a fact about the defendant or the circumstances of the crime. It is instead a lingering uncertainty about facts, a state of mind that exists somewhere between "beyond a reasonable doubt" and "absolute certainty." Petitioner's "residual doubt" claim is that the States must permit capital sentencing bodies to demand proof of guilt to "an absolute certainty" before imposing the death sentence. Nothing in our cases mandates the imposition of this heightened burden of proof at capital sentencing.

*Id.* (quoting *Franklin*, 487 U.S. at 188 (O'Connor, J., concurring)) (internal citations omitted).    The Eighth Circuit reasoned that although *Franklin* addressed the constitutionality of denying a "residual doubt" instruction, rather than the permissibility of denying such an instruction based on the FDPA, "[t]he Justices' reasons for declining to recognize a constitutional rule apply with equal force [to] the FDPA." *Id.* at 815. The *Rodriguez* Court concluded that because "[r]esidual doubt is not a mitigating circumstance of the defendant or of the offense," but rather simply "highlights the difficulty of ever proving anything with complete certainty," nothing in the FDPA requires a district court to grant a residual doubt instruction.  *Id.*

The Court agrees with the Eighth Circuit's analysis and it will, for that reason, grant the government's motion.[34]   To the extent that it has discretion under the

---

[34] The Court disagrees with the defendants that it will be in a better position to rule on the government's motion after it hears all of the evidence presented at the guilt phase. *See* R. Doc. No. 942, at 3.  The defendants provide no reasoning as to why the

FDPA, the Court will not permit the defendants to argue residual doubt during voir dire or the penalty phase, and it will not grant any request by the defendants for a residual doubt instruction. The defendants will also not be permitted to submit residual doubt as a mitigating factor to the jury.

### C. Penalty Phase Weighing Standard of Proof

The government moves the Court to preclude argument or instruction that the beyond a reasonable doubt standard applies to the weighing process during the penalty phase.[35] The government argues that, pursuant to the text of the FDPA and Fifth Circuit precedent, the Sixth Amendment does not require a jury to find that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt.[36] Furthermore, the government argues, the Supreme Court's decision in *Hurst v. Florida*, 136 S.Ct. 616, 619 (2016) (holding that the Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death) did not alter the law as set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 494 (2000) (holding that any fact that exposes a defendant to a greater punishment than that authorized by the jury's guilty verdict is an "element" that must be submitted to a jury and found beyond a reasonable doubt) and *Ring v. Arizona*, 536 U.S. 584, 609 (2002) (applying *Apprendi* and holding that an aggravating circumstance necessary for imposition of the death penalty must be found by a jury).[37]

---

evidence presented during the guilt phase should affect the Court's decision as to whether it should provide a residual doubt instruction.

[35] R. Doc. No. 929.

[36] R. Doc. No. 929-1, at 1–2.

[37] R. Doc. No. 984, at 1–3.

The defendants respond that, although the Fifth Circuit has held that a capital defendant is not entitled to an instruction that the beyond a reasonable standard applies to the weighing process based on the Sixth Amendment right to a jury trial and Eighth Amendment right to reliability in capital decision making, its analysis in *United States v. Fields*, 483 F.3d 313, 345 (5th Cir. 2007) was flawed.[38]  Moreover, the defendants argue, the Supreme Court's decision in *Hurst* "effectively abrogated" *Fields* and other United States Courts of Appeals decisions that held that the beyond a reasonable doubt standard does not apply to the weighing process.[39]

Pursuant to 18 U.S.C. § 3593(e), "the jury, or if there is no jury, the court, shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death[.]"  In *Fields*,  the Fifth Circuit rejected the defendant's argument that "the FDPA violates the Sixth Amendment, as construed in *Ring*, because it does not require the jury to apply the reasonable doubt standard in deciding whether the aggravating factors outweigh the mitigators." 483 F.3d at 345.  The *Fields* Court reasoned that:

> In *Ring*, the Supreme Court applied *Apprendi v. New Jersey* to capital cases. It reiterated, "If [Congress] makes an increase in a defendant's authorized punishment contingent on [a] finding of a fact, that fact—no matter how [Congress] labels it—must be found by a jury beyond a reasonable doubt." 536 U.S. at 602 (citing *Apprendi*, 530 U.S. at 482–83). Contrary to [the defendant's] contention, this rule does not require the jury to apply the reasonable doubt standard during the weighing process.

---

[38] R. Doc. No. 940, at 3–4.
[39] *Id.* at 4–6.

> The *Apprendi/Ring* rule does not extend to the ultimate decision
> whether to impose the death penalty. Capital defendants have no
> constitutional right to a jury at sentencing. *See Proffitt v. Florida,* 428
> U.S. 242, 252 (1976) (plurality opinion). Indeed, the Supreme Court has
> explicitly held that judges may do the weighing of aggravating and
> mitigating circumstances consistent with the Constitution. *See Clemons
> v. Mississippi,* 494 U.S. 738, 745 (1990). The Court's *Apprendi* line of
> cases reveals that the reasonable doubt standard is appurtenant to the
> right to jury trial. Since the Constitution does not require a jury to do
> the weighing, we cannot conclude that the showing required must be
> proof beyond a reasonable doubt.

*Id.* at 345–46. The *Fields* Court also found that the *Apprendi/Ring* rule does not

apply to the penalty phase weighing process because it applies by its terms only to

findings of fact, not to moral judgments, and "the jury's decision that the aggravating

factors outweigh the mitigating factors is . . . a 'highly subjective,' 'largely moral

judgment' regarding the punishment that a particular person deserves[.]" *Id.* at 346

(quoting *Caldwell v. Mississippi,* 472 U.S. 320, 340 n. 7 (1985)).

*Fields* is consistent with the other United States Courts of Appeals that have

considered the issue. *See, e.g., United States v. Gabrion*, 719 F.3d 511, 532–33 (6th

Cir. 2013) (en banc); *United States v. Runyon*, 707 F.3d 475, 516 (4th Cir. 2013);

*United States v. Fields*, 516 F.3d 923, 950 (10th Cir. 2008); *United States v. Mitchell*,

502 F.3d 931, 993–94 (9th Cir. 2007), *cert. denied*, 553 U.S. 1094 (2008); *United States

v. Sampson*, 486 F.3d 13, 32 (1st Cir. 2007).

The defendants' argument that *Hurst*, decided in 2016, effectively abrogates

*Fields* and the other circuit court rulings holding the same hinges on the claim that

the Supreme Court supposedly "viewed the trial judge's weighing determination as a

finding of a fact for purposes of *Apprendi*."[40]  The defendants conclude that, therefore, the jury's weighing of the aggravating and mitigating factors—a fact for purposes of *Apprendi*—must be found beyond a reasonable doubt pursuant to the Fifth and Sixth Amendments.[41]

Notably absent from the defendants' (or the government's) brief is any mention of *McKinney v. Arizona*, 140 S. Ct. 702, 708 (2020), which held that "*Ring* and *Hurst* d[o] not require jury weighing of aggravating and mitigating circumstances[.]"  The *McKinney* Court clarified that:

> Under *Ring* and *Hurst*, a jury must find the aggravating circumstance that makes the defendant death eligible. But importantly, in a capital sentencing proceeding just as in an ordinary sentencing proceeding, a jury (as opposed to a judge) is not constitutionally required to weigh the aggravating and mitigating circumstances or to make the ultimate sentencing decision within the relevant sentencing range.

*Id.* at 707. *McKinney* therefore effectively embraces  the Fifth Circuit's holding in *Fields*—because "the Constitution does not require a jury to do the weighing, [the Court] cannot conclude that the showing required must be proof beyond a reasonable doubt." 483 F.3d at 346.

Therefore, the government's motion to preclude argument or instruction that the beyond a reasonable doubt standard applies to the weighing process of the penalty phase must be granted. The Court rejects the defendants' contention that ruling on

---

[40] R. Doc. No. 940, at 6.
[41] *Id.*

the government's motion is premature;[42] the law is clear, and the Court finds no reason to delay consideration of the motion.

### D. Execution Impact and Proportionality Evidence

The government next moves the Court to preclude the defendants from introducing execution impact and/or proportionality evidence.[43]  Specifically, the government urges the Court to prohibit the defendants from "presenting evidence about the hypothetical impact that their potential execution might have on others" and from eliciting testimony from witnesses with respect to the appropriateness of the defendants' potential sentences.[44]

The government also argues that the Court should preclude the defendants from introducing two types of "proportionality evidence."  First, any argument "pertaining to the proportionality of one defendant's culpability to that of his co-defendant," and, second, evidence and/or argument comparing the facts of the defendants' case to other cases in which a sentence of death was not imposed, so called "comparative proportionality" evidence.[45] In the event that the Court finds that comparative proportionality evidence is relevant, the government urges the Court to exclude such evidence pursuant to § 3593(c) because allowing testimony regarding the disposition of other capital cases would result in mini-trials that would confuse the jury.[46] *See* 18 U.S.C. § 3593(c) ("Information is admissible regardless of its

---

[42] R. Doc. No. 940, at 1.

[43] R. Doc. No. 930.

[44] R. Doc. No. 930-1, at 1–3.

[45] *Id.* at 6–7.

[46] *Id.* at 10.

admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.").

In response, the defendants assure the Court that they have no intention of eliciting testimony from any defense witness expressing "an opinion about the appropriate sentence in this case" and will instruct their witnesses accordingly.[47] The defendants also make clear that they do not intend to elicit testimony "from family and friends [of the defendants] as to whether they want [a defendant] to die and the impact on them if he were executed" or any testimony that constitutes a "general plea for mercy."[48] The defendants distinguish *United States v. Snarr*, 704 F.3d 368, 401 (5th Cir. 2013) on the ground that it precludes only testimony about the impact that a defendant's execution would have on third parties, whereas the defendants only object "to any suggestion that they should be prevented from fully presenting the nature of their relationships with family and friends as well as any evidence that would directly or indirectly suggest that their execution would cause grief and loss or otherwise adversely affect their family and friends."[49] For example, Johnson intends

---

[47] R. Doc. No. 938, at 1.

[48] *Id*. at 7 (citing *Jackson v. Dretke*, 450 F.3d 614, 615–16 (5th Cir. 2006) (holding that the state court's decision to exclude execution impact testimony by the defendant's family and friends on "(1) whether they wanted him to die and (2) what the impact on them would be if he were executed" was not an unreasonable application of federal law based on Supreme Court precedent) and *Jackson*, 549 F.3d at 970 n.3 (holding that the district court properly excluded testimony from the defendant's mother that would have constituted a general plea for mercy for her son's life)).

[49] *Id*. at 1–2, 6–7.

to put forth evidence of his relationship with his young daughter and his involvement in her life.[50]

The defendants assert that proportionality evidence, specifically, allowing an individual defendant to compare and assess his culpability to that of his other co-defendants is permissible under the FDPA and clearly contemplated by the statutory mitigators of "minor participation" and "equally culpable defendants" described in 18 U.S.C. § 3592(a)(3) and (4).[51]  The defendants also contend that comparative proportionality evidence is a mitigating factor that must be considered by the jury.[52]

With respect to execution impact evidence, the government clarifies in its reply brief that it, like the defendants, will not elicit any witness's opinion as to what sentence the jury should impose on the defendants.[53]  Although the parties are in agreement as to this point, the government requests the Court to nonetheless enter an order prohibiting any party from eliciting such opinion evidence, whatever the opinion may be, and regardless of whether the opinion is elicited on direct- or cross-examination.[54]

The government also clarifies that it agrees that the defendants should not be prevented from "fully presenting the nature of their relationships with family and friends."[55]  However, the government contends that the defendants should not be able

---

[50] *Id.* at 2 n.1.
[51] *Id.* at 12–13.
[52] *Id.* at 11–12.
[53] R. Doc. No. 983, at 1–2.
[54] *Id.* at 2.
[55] *Id.*

22

to present "any evidence that would directly or indirectly suggest that their execution would cause grief and loss or otherwise adversely affect their family and friends."[56] Citing a Fourth Circuit case as an example, however, the government notes that it would have no opposition to testimony from the defendants' children about "what their father's involvement in their life [sic] has been and whether they feel their father loves them" and about "[a defendant's] relationship with his daughters, how he's manifested remaining in their lives[,] [a]nd whether he had manifested love and care for them."[57] The government explains that it has no opposition to such testimony because this type of evidence touches on the characteristics of the defendant himself.[58]

The government maintains in its reply brief that comparative proportionality evidence should be excluded, but it fails to address the defendants' argument that the FDPA provides for the comparison of culpability among co-defendants as a mitigating factor.[59]

### i.    *Execution Impact Evidence*

The Court will grant the government's motion.  While it is only possible, at this juncture, to draw the outer bounds of admissible testimony, the government and the defendants agree on a number of points, with which the Court also agrees. The Court will enter two orders reflecting these common understandings.  First, the parties

---

[56] *Id.*
[57] *Id.* at 4 (quoting *United States v. Hager*, 721 F.3d 167, 194 (4th Cir. 2013)).
[58] *Id.*
[59] *Id.* at 4–7.

agree that witnesses should not be permitted to testify as to what sentence the witness believes one or more of the defendants should receive, and the Court will enter an order prohibiting any party from eliciting such opinion evidence.

Second, the Court will enter an order that the defendants may not elicit testimony from any defense witness with respect to the impact on the witness if the defendant was executed. *See Dretke*, 450 F.3d at 615; *Snarr*, 704 F.3d at 401 (holding that the district court correctly excluded testimony with respect to the impact the defendant's execution would have on certain of his family members because such evidence "does not reflect on [the defendant's] background or character or the circumstances of his crime" and "the Supreme Court has never included friend/family impact testimony among the categories of mitigating evidence that must be admitted during a capital trial") (internal quotation marks and citations omitted). Defense witnesses will also not be permitted to make general pleas for mercy for a defendant's life. *See Jackson*, 549 F.3d at 970 n.3. As the defendants explain in their brief, they do not intend to elicit this type of testimony and the exclusion of such evidence is supported by Fifth Circuit precedent.[60]

To the extent that the defendants will attempt to offer evidence that does not directly refer to the impact on a witness if a defendant was executed, the Court will defer ruling on the issue until trial.

---

[60] R. Doc. No. 938, at 7. To the extent this order contradicts the defendants' argument that they should be able to fully present the nature of their relationships with family and friends as well as any evidence that would directly or indirectly suggest that their execution would cause grief and loss or otherwise adversely affect their family and friends, this order controls.

*ii. Proportionality Evidence*

The Court turns next to the portion of the government's motion seeking to preclude the introduction of proportionality evidence. The Court will deny the government's motion with respect to any defendant's ability to argue and compare his culpability and sentence relative to the culpability and sentence of one or more of his co-defendants, and the Court will dismiss the government's motion without prejudice with respect to comparative proportionality evidence.

Although it is unclear whether the government still maintains that the Court should preclude the defendants from making any argument pertaining to their respective culpabilities and sentences, such an argument is meritless. Section 3592(a)(4) provides that "the finder of fact shall consider any mitigating factor, including . . . [that] [a]nother defendant or defendants, equally culpable in the crime, will not be punished by death." 18 U.S.C. § 3592(a)(4). Pursuant to the FDPA, a defendant may present argument to the jury that one or more of his co-defendants, whom he contends is equally culpable in the crime, will not be sentenced to death. *See Gabrion*, 719 F.3d at 524 ("[Section 3592(a)(4)] does not measure the defendant's culpability itself, but instead considers—as a moral data point—whether that same level of culpability, for another participant in the same criminal event, was thought to warrant a sentence of death."); *United States v. Whitten*, 610 F.3d 168, 204 (2d Cir. 2010) (holding that the district court satisfied the parameters of § 3592(a)(4) when it allowed the defendant to stipulate that other defendants who participated in the crime had not been sentenced to death); *United States v. Causey*, 185 F.3d 407, 445

25

(5th Cir. 1999) (explaining that § 3592(a)(4) permits the jury "to take into account as a reason not to impose the death penalty the fact . . . that other participants in the killing would not be sentenced to death and executed, even though they might be equally or even more responsible than the defendant for the victim's death").[61]

It is therefore clear that, under § 3592(a)(4), each of the defendants may present argument to the jury that one or more of his co-defendants, whom he contends is equally culpable in the crime, will not be sentenced to death. However, if the defendants are allowed to proceed with separate penalty phases, the ability of each defendant to take advantage of the equally culpable defendants mitigator presents all sorts of strategic issues.[62] For example, the defendant who proceeds to sentencing first would not be able to argue that his equally or more culpable co-defendants, with the exception of Brumfield or Esteves, will not be sentenced to death so he, likewise, should not be sentenced to death.[63] On the other hand, a defendant may want to proceed with sentencing first if the evidence presented during the guilt phase casts

---

[61] The government cites *United States v. Mitchell*, 502 F.3d 931, 981 (9th Cir. 2007) in support of its contention that the Court should exclude argument with respect to the defendants' respective culpabilities and sentences. R. Doc. No. 930-1, at 7. *Mitchell* is inapposite. The *Mitchell* Court dismissed the defendant's argument that his death sentence violated the Eighth Amendment because he was less culpable than his co-defendants, neither of whom was sentenced to death, because the jury considered and rejected the defendant's theory that he was less culpable than his co-defendants. *Id.*

[62] The Court has not yet decided whether the defendants are entitled to individual penalty phases. The Court's briefing order, R. Doc. No. 1065, provides the deadline by which any defendant must file a motion to sever his penalty phase from that of his co-defendants.

[63] This, of course, assumes that the jury will not sentence one or more of the other capital defendants to death.

him as the least culpable capital defendant, so as to avoid the jury hearing about the acts of the other defendants and associating the defendant with his co-defendants and their bad acts before his penalty phase even begins. These are all strategic decisions that the defendants must take into account when contemplating whether to move to sever their respective penalty phases.[64]

The Court will deny the government's motion with respect to any defendant's ability to argue that an equally or more culpable co-defendant was not sentenced to death for the same crime. However, the Court also notes that the issue of how the equally culpable defendants mitigator may be utilized in this case will need to be revisited in the event that the Court permits the defendants to proceed with individual penalty hearings.

Turning next to comparative proportionality evidence, the Court first notes that it has previously held, in denying the defendants' joint motion to bar the death

---

[64] To be clear, the Court has not decided that the defendants are entitled to separate penalty phases. *See Puiatti v. McNeil*, 626 F.3d 1283, 1315 (11th Cir. 2010) (rejecting the defendant's argument that although he was not entitled to severance during the guilt phase he was nonetheless entitled to a separate penalty phase, because there is "no precedent that suggests a joint penalty trial is improper for co-defendants who were properly joined in the guilt phase" and "[t]he Supreme Court has never intimated, much less held, that the special concerns in capital cases require, or even suggest, that severance is necessary"); *United States v. Bernard*, 299 F.3d 467, 476 (5th Cir.2002) (upholding the district court's decision not to sever capital defendants' trial, even though one defendant offered mitigating evidence of his Christian conversion and another defendant lacked comparable mitigating evidence); *United States v. Milburn*, No. 05-167, 2008 WL 2557973, at *6 (N.D. Cal. June 24, 2008) (rejecting the argument that the risk that the jury would attribute the negative aspects of one defendant's character to his co-defendant's character because the three defendants "share characteristics such as race, gang associations, and conspiracy charges with overlapping overt acts" warranted separate penalty phases).

penalty, that the FDPA is not unconstitutional on the basis that it lacks proportionality review.[65]  Accordingly, allowing the jury to consider comparative proportionality evidence is not constitutionally required.

The question is, then, whether comparative proportionality evidence is relevant evidence in mitigation under the FDPA and admissible pursuant to the evidentiary standard set forth in § 3593(c).  Comparative proportionality evidence is not one of the seven mitigating factors set forth in § 3592(a)(1)–(7).  Therefore, the "catch-all" mitigator, "[o]ther factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence," must encompass comparative proportionality evidence if such evidence is permissible under the FDPA.  *See* 18 U.S.C. § 3592(a)(8).

The defendants argue, relying on *Davis*, 132 F. Supp. 2d at 464,[66] that contrary to the government's assertion, the FDPA does not limit mitigators to those factors that are related to the defendant or the crime.[67]  The defendants urge the Court to follow *United States v. Sampson*, 335 F. Supp. 2d 166, 193–96 (D. Mass. 2004), *aff'd*, *Sampson*, 486 F.3d at 45, which held that comparative proportionality evidence, specifically the fact that "[t]here are numerous other federal defendants convicted of multiple murder[s] who have not been sentenced to death," was an appropriate

---

[65] R. Doc. No. 918, at 15–16.

[66] The quote and citation to *Davis* in the defendants' brief does not exist.  *See* R. Doc. No. 938, at 11 (quoting *United States v. Davis*, 132 F. Supp. 2d 455, 364–64 (E.D. La. 2001)).  Based upon their argument, it appears that the defendants intended to cite to *Davis*, 132 F. Supp. 2d at 464.

[67] R. Doc. No. 938, at 11.

mitigating factor.[68] *Sampson* reasoned that because "[p]roportionality is generally regarded as important to sentencing" and is "the foundation of the current regime of sentencing under the United States Sentencing Guidelines[,]  . . . [i]t would be anomalous if the choice between a life sentence and a death sentence w[as] the only sentencing decision in the federal system in which proportionality is not a proper consideration." *Id*. at 195–96.

The defendants also contend that, contrary to the government's assertion, any comparative proportionality evidence that they seek to introduce will be admissible under the standard set forth in § 3593(c) and will not result in mini-trials or jury confusion.[69] According to the defendants, such evidence will be narrowly tailored and properly vetted by the Court in advance of trial, so a blanket prohibition is unnecessary and would result in the exclusion of relevant evidence.[70]

The government directs the Court's attention to *Gabrion*, which held that "[m]itigation evidence . . . is not an empty concept to be filled by whatever a lawyer or court thinks might persuade a single juror in a particular case."[71] 719 F.3d at 522. As the Sixth Circuit explained:

> It is true that the Supreme Court has said that mitigation evidence includes evidence that "the sentencer could reasonably find . . . warrants a sentence less than death." *Tennard v. Dretke,* 542 U.S. 274, 285 (2004) (quotation marks omitted). But the key word there is "reasonably"; and read in the context of the rest of the Supreme Court's mitigation-evidence caselaw, and *Penry* [*v. Lynaugh,* 492 U.S. 302 (1989), *abrogated on other grounds by Atkins v. Virginia,* 536 U.S. 304

---

[68] *Id*. at 11–12.
[69] *Id*. at 12.
[70] *Id*.
[71] R. Doc. No. 930-1, at 8.

(2002)] in particular, that passage simply refers to evidence relevant to "a reasoned moral response to the defendant's background, character, and crime." *Penry*, 492 U.S. at 319. Otherwise, for example, the Eighth Amendment would compel admission of evidence regarding the positions of the planets and moons at the time of the defendant's offense—so long as he can show that at least one juror is a firm believer in astrology.

719 F.3d at 522.

The defendants' argument that mitigators are not limited to those factors that are related to a defendant or his crime is clearly foreclosed by Fifth Circuit precedent. *Snarr*, 704 F.3d at 401 (holding that because certain evidence did not "reflect on [the defendant's] background or character or the circumstances of his crime," such evidence was not "among the categories of mitigating evidence that must be admitted during a capital trial") (internal quotation marks and citations omitted); *see also United States v. Fell*, 531 F.3d 197, 219 (2d Cir. 2008) (holding that while "a capital defendant has a right to introduce 'as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death,'" this right "d[oes] not 'limit[] the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense'") (quoting *Lockett v. Ohio,* 438 U.S. 586, 604 n.12 (1978)); *United States v. Purkey*, 428 F.3d 738, 756 (8th Cir. 2005) (explaining that the defendant does not have "*carte blanche* to introduce any and all evidence that [he] wishes" and that "[t]he trial court retains its traditional authority to exclude, as irrelevant, evidence not bearing on the

defendant's character, prior record, or the circumstances of his offense) (internal quotation marks and citation omitted).

Therefore, the Court has serious doubts as to whether *any* type of comparative proportionality evidence is admissible under § 3592(a). *See Snarr*, 704 F.3d at 401; *see also Umana,* 750 F.3d at 350 (affirming the district court's exclusion of evidence of other MS-13 murders as "irrelevant to [the defendant's] character or the circumstances of his offenses" because "[i]t is difficult to imagine that giving the jury evidence of unrelated murders by MS–13 members would contribute to the individualized decision of whether to impose the death penalty on [the defendant]"); *United States v. Williams*, 18 F. Supp. 3d 1065, 1075 (D. Haw. 2014) (holding that comparative proportionality evidence is not relevant evidence in mitigation under the FDPA); *Taylor*, 583 F. Supp. 2d at 935 ("The outcomes of other cases and the races of victims and defendants in other cases have nothing to do with the defendant in this case or the circumstances of his offense or any of the mitigating factors in § 3592(a)."); *United States v. Regan,* 221 F. Supp. 2d 659, 660 (E.D.Va. 2002) (concluding that because the defendant had no right to proportionality review under the FDPA, he had no right to discovery of evidence "that would compare his conduct to that of others convicted of espionage," and reasoning that "[t]he conduct of other individuals involved in totally unrelated acts of espionage has no bearing on the culpability of the Defendant's conduct for mitigation purposes").

Assuming that comparative proportionality evidence is admissible under the FDPA, such evidence still must pass muster under the evidentiary standard set forth

in § 3593(c).[72] *See Umana*, 750 F.3d at 350–51 (affirming the district court's exclusion of the circumstances of other MS-13 murders as irrelevant mitigation evidence and on the alternative ground that "if [the defendant] tried to prove these [other] murders during sentencing, the process would amount to mini-trials that would take days and distract the jury"); *Williams*, 18 F. Supp. 3d at 1076 (noting that "even if [comparative proportionality evidence] might have some relevance, the evidence proffered by Defendant is likely to confuse and mislead the jury" and is inadmissible under § 3593(c)); *Regan,* 221 F. Supp. 2d at 660–61 (same); *Taylor*, 583 F. Supp. 2d at 936 ("To hold [that comparative proportionality evidence is admissible] would necessitate turning the trial into a series of mini-trials over the facts and circumstances of other prosecutions, in a situation where the specific facts and circumstances and the exact reason the juries reached their decisions in those other prosecutions are not available to the parties. Such information has no probative value and would confuse and mislead the jury with irrelevant information.").

While the Court doubts that comparative proportionality evidence the defendants may offer will be admissible under § 3593(c), like other courts to have considered the issue,[73] it will allow the defendants to submit their proposed

---

[72] While *Sampson*, relied upon by the defendants, held that comparative proportionality evidence was a relevant mitigating factor, it ultimately excluded the proffered evidence because the probative value of such evidence was outweighed by the danger of unfair prejudice and the risk that the penalty phase would transform into mini-trials of other cases. 335 F. Supp. 2d at 197.

[73] *See, e.g., Regan*, 221 F. Supp. 2d at 660–61 (holding that proportionality evidence relating to the harm committed in other espionage cases could not be used as mitigating evidence after the defendant identified ten espionage cases he sought to use in comparison); *Madison*, 337 F. Supp. 3d at 1205–06 (agreeing with the

comparative proportionality evidence before ruling on the government's motion. The defendants must provide the government with a brief summary of the comparative proportionality evidence they seek to introduce, if any, by August 31, 2020. The Court will dismiss the government's motion with respect to comparative proportionality evidence without prejudice, reserving it the right to re-urge the same if, and when, the defendants notify the government of the comparative proportionality evidence they seek to admit during the penalty phase.

### E. Mercy Instruction

The government moves the Court to preclude the defendants from introducing an instruction, evidence, or argument that "death is never required"—i.e. a "mercy instruction"—and from arguing that the jury should consider factors other than those statutorily enumerated by the FDPA.[74]

The defendants contend that the government conflates two types of jury instructions in federal capital trials—a "death is never required instruction" and a "mercy instruction."[75] The defendants contend that "a death is never required instruction" is an instruction that the FDPA, by its terms, never requires a jury to impose a death sentence *prior* to the weighing process, that is, prior to the jury making a discretionary finding that any aggravating factors sufficiently outweigh any

---

defendant that the government's motion to preclude comparative proportionality evidence was premature because neither party knew what, if any, comparative proportionality evidence the defendant would seek to admit, and "any present attempt [by the court] to assess its admissibility would be going in blind").

[74] R. Doc. No. 931-1, at 1.

[75] R. Doc. No. 943, at 1–2.

mitigating factors.[76]  By contrast, according to the defendants, a "mercy instruction" is an instruction that, even if the jury finds, *after* the weighing process, that a death penalty is justified, the jury is permitted to exercise mercy and impose a life sentence without the possibility of release instead.[77]  The defendants argue that the first instruction, "a death is never required" instruction, has been permitted by almost every court that has considered the question.[78]  With respect to the second instruction, a "mercy instruction," the defendants urge the Court to deny the government's motion or, alternatively, reserve ruling on whether such an instruction should be permitted until the parties submit their proposed penalty phase instructions with supporting memoranda to the Court.[79]

The government replies that a "death is never required" instruction is unnecessary because the government's proposed penalty phase instructions will guide the jury through the FDPA process and include instructions about the return of a non-death sentence if the jury does not find a required eligibility factor, if the jury finds that the aggravating factors do not outweigh the mitigating factors, or if the jury finds that the aggravating factors standing alone (if no mitigating factors are found) do not justify a sentence of death.[80]  The government also argues that instructions that the FDPA never requires a jury to impose a death sentence prior to engaging in the weighing process and that death is never required even after the jury

---

[76] *Id.*

[77] *Id.*

[78] *Id.* at 2.

[79] *Id.*

[80] R. Doc. No. 986, at 1.

has found that the aggravating factors outweigh the mitigating factors would be duplicative, unnecessary, and have the danger of misleading and confusing the jury.[81] The government essentially contends that the defendants' arguments are meritless because its proposed jury instructions will render any type of death is never required or mercy instruction unnecessary.

Consequently, the Court finds that it would be appropriate to rule on the government's motion when it has the parties' proposed penalty phase jury instructions before it. The Court will dismiss the government's motion without prejudice, reserving it the right to re-urge its motion once the parties have submitted their proposed jury instructions.

### F.  Prison Conditions Generally

Finally, the government moves the Court to preclude evidence or argument concerning prison conditions generally.[82] Specifically, the government contends that defendants in many FDPA cases seek to introduce evidence about security procedures at prison facilities such as the ADX, Florence, in order to suggest that a defendant will not be a future danger to society if imprisoned, rather than executed.[83] The government argues that such supposed mitigating evidence is irrelevant and illogical, because it posits that since a defendant is highly dangerous, he does not deserve the

---

[81] *Id.* at 3.
[82] R. Doc. No. 932.
[83] R. Doc. No. 932-1, at 1.

death penalty because he will be sent to a facility equipped to house dangerous defendants.[84]

The defendants argue that the government's motion is premature, as the defendants have not indicated that they intend to introduce any evidence regarding prison conditions at maximum-security prisons and the evidence they seek to admit during the penalty phase will ultimately depend upon the facts presented during the guilt phase and the government's case-in-aggravation.[85] Nonetheless, the defendants contend that the government's motion must be denied because Supreme Court precedent establishes that capital defendants are entitled to introduce evidence in mitigation that they are well-behaved, well-adjusted prisoners.[86]

The government acknowledges that a defendant may offer evidence in mitigation that he has adjusted well to incarceration and has behaved well while imprisoned, as well as any relevant information that would enable the jury to make a prediction about his probable conduct in prison or rebut the government's proof of his future dangerousness.[87] It clarifies that the evidence it seeks to exclude, rather, is "testimony from experts who . . . delve into the security procedures of the Federal Bureau of Prison (BOP)'s maximum security prison in Florence, Colorado, commonly referred to as 'ADX,' and similar testimony about BOP generally, as evidence that it will be virtually impossible for the defendants to engage in wrongdoing."[88]    The

---

[84] *Id.* at 2.
[85] R. Doc. No. 941, at 1–2.
[86] *Id.* at 2.
[87] R. Doc. No. 932-1, at 1–3.
[88] R. Doc. No. 985, at 1–2.

government contends that not only is this type of testimony speculative, as it is unknown whether one or more of the defendants will be housed at ADX, but it is also improper mitigating evidence.[89]

The Sixth, Seventh, and Eighth Circuits have held that "general prison security," including testimony and evidence about the general conditions of BOP facilities, is not a permissible mitigating factor under the FDPA. *United States v. Coonce*, 932 F.3d 623, 639 (8th Cir. 2019) ("The district court need not—and should not—instruct juries that sufficient control in prison is a mitigating factor. We are not certain this evidence is individualized enough to qualify as a mitigating factor because some BOP evidence is common to many BOP defendants.") (citation omitted); *Taylor*, 814 F.3d at 356 (affirming the district court's conclusion that "[g]eneral prison security is not a proper mitigating factor because it is unrelated to the defendant's background, record, or character, or any other circumstance of the offense, 18 U.S.C. § 3592(a)(8), or any other mitigating factor required by the Constitution and the FDPA")[90]; *cf. Morva v. Zook*, 821 F.3d 517, 527 (4th Cir. 2016) (holding that the state

---

[89] *Id.* at 2.

[90] The defendants argue that *Taylor* is distinguishable because the court "held only that the defense could not offer evidence of prison security to rebut the government's allegations of future dangerousness that related solely to conduct occurring outside of prison." R. Doc. No. 941, at 5.

*Taylor* held that prison security conditions had no relevance to the government's evidence regarding the defendant's future dangerousness and that, therefore, the defendant could not offer such evidence in rebuttal. 814 F.3d at 357. The government's evidence could only support a conclusion that the defendant "might be involved in or might influence others to commit harm to others, including prison staff and other inmates." *Id.* Because "no rational fact finder could conclude [the] [d]efendant is likely to personally injure someone while in custody, whether a fellow

court "did not unreasonably apply U.S. Supreme Court precedent by deeming irrelevant evidence that did not relate specifically to [the defendant's] character, background, criminal record, or the circumstances of his offense—i.e., evidence regarding general prison life and security offered to show that [the defendant's] 'opportunities to commit criminal acts of violence in the future would be severely limited in a maximum security prison'").[91]

In *United States v. Johnson*, the Seventh Circuit provided an extensive analysis, with which the Court agrees, as to why evidence about general prison conditions is not a permissible mitigating factor under the FDPA:

> "We add as a detail that while the defendant was of course entitled to counter the government's evidence that he would be a continued menace to society while in prison, that being evidence offered to establish an aggravating factor, 18 U.S.C. § 3593(c) . . . he should not have been permitted to present to the jury, as he was, evidence of the existence of maximum-security federal prisons decked out with control units, in order to establish a mitigating factor. A mitigating factor is a factor

---

inmate or a prison staff member," the proffered testimony about prison security conditions was inadmissible. *Id.*

Importantly, before the Sixth Circuit even began its discussion with respect to whether the defendant was entitled to present testimony about prison security conditions as evidence in rebuttal, it noted that the district court properly held that "[g]eneral prison security is not a proper mitigating factor[.]" *Id.* at 356.

[91] The defendants contend that *Lawlor v. Zook*, 909 F.3d 614, 631 (4th Cir. 2018) "essentially overruled" *Morva*. R. Doc. No. 941, at 4. This is incorrect. *Lawlor* simply distinguished *Morva* on the ground that *Morva* held that it was not constitutional error for the state court to hold that generalized evidence of "conditions of prison life" was irrelevant and, therefore, inadmissible, whereas the issue in *Lawlor* was whether it was "constitutional error [for the state court] to exclude proffered expert evidence that [the defendant], based on his personal background and characteristics, presented a 'very low risk' of future violence in prison[.]" *Lawlor*, 909 F.3d at 625, 631 n.5. The government does not move to exclude expert testimony about the defendants' risk of future violence in prison based on their personal backgrounds and characteristics. *See* R. Doc. No. 932-1, at 3 (citing *Lawlor*, 909 F.3d at 628).

arguing against sentencing *this* defendant to death; it is not an argument against the death penalty in general. *See Penry*[, 492 U.S. at 328]; *Eddings*[,455 U.S. at 110]; *Lockett*[, 438 U.S. at 604 n. 12]. The argument that life in prison without parole, especially if it is spent in the prison's control unit and thus in an approximation to solitary confinement, sufficiently achieves the objectives aimed at by the death penalty to make the latter otiose is an argument addressed to legislatures, not to a jury. This is apparent from the fact that the list of mitigating factors in the federal death-penalty statute does not include the harshness or ugliness or (some would say) the immorality of the death penalty, but only factors specific to the defendant. *See* 18 U.S.C. § 3592(a), and in particular subsection (a)(8) ("other factors *in the defendant's background, record, or character* or any other circumstances *of the offense* that mitigate against imposition of the death sentence") (emphasis added).

223 F.3d 665, 674–75 (7th Cir. 2000).

Therefore, the Court will grant the government's motion to the extent that it will not permit the defendants to present evidence about prison security measures, including testimony about the security measures in place at BOP facilities in general or any particular BOP facility, in support of a mitigating factor that the defendants should not be sentenced to death because it will be virtually impossible for them to engage in wrongdoing while in BOP custody. However, as both the government and the defendants recognize, the defendants may be able to present such testimony to rebut any *information* or *evidence* presented by the government during its case-in-aggravation that the defendants will continue to be a danger to others while incarcerated.[92]  *See* 18 U.S.C. § 3593(c) ("[T]he defendant shall be permitted to rebut any information received at the [penalty] hearing."); *Taylor*, 814 F.3d at 357 ("[The]

---

[92] R. Doc. No. 932-1, at 1–2; R. Doc. No. 941, at 5–6. The defendants conflate their right to rebut the government's evidence in aggravation with a right to present prison security conditions as a separate mitigating factor. *See* R. Doc. No. 941, at 5–6.

right to rebut relates to information or evidence, not allegations. If the government alleges something but has no evidence to support it, the jury will ignore it and there is nothing to rebut.").[93]

### III.

Accordingly,

**IT IS ORDERED** that the government's motion to preclude evidence of unsworn allocution before any capital jury is **GRANTED.**

**IT IS FURTHER ORDERED** that the government's motion to preclude evidence or argument concerning residual doubt is **GRANTED**.

**IT IS FURTHER ORDERED** that the government's motion to preclude argument or instruction that the beyond a reasonable doubt standard applies to penalty phase weighing is **GRANTED**.

**IT IS FURTHER ORDERED** that the government's motion to preclude the defendants from arguing execution impact and proportionality evidence is **GRANTED IN PART, DENIED IN PART,** and **DISMISSED WITHOUT PREJUDICE** as set forth herein.

---

[93] The Sixth Circuit recognized in *Taylor* that, in a case where there was evidence that the defendant was a "predator" with a propensity to personally harm others, evidence of security measures available in BOP facilities might be admissible. 814 F.3d 340, 357 (6th Cir. 2016). The Seventh Circuit similarly recognized in *Johnson*, quoted, *supra*, that the existence of maximum-security federal prisons was not relevant to any mitigating factor, but such evidence may be relevant in the proper case as rebuttal evidence to counter evidence of the defendant's future dangerousness. 223 F.3d at 674–75.

**IT IS FURTHER ORDERED** that counsel shall not elicit opinion testimony from any witness with respect to what sentence the witness believes the jury should impose on one or more of the defendants.

**IT IS FURTHER ORDERED** that counsel for the defendants shall not elicit testimony from any witness with respect to the direct impact that a defendant's execution would have on the witness or testimony that would constitute a plea for mercy for a defendant's life.

**IT IS FURTHER ORDERED** that the government's motion with respect to proportionality evidence is **DENIED**, and that any defendant may present evidence or argument to the jury during the penalty phase that an equally culpable co-defendant will not be sentenced to death.

**IT IS FURTHER ORDERED** that the government's motion with respect to comparative proportionality evidence is **DISMISSED WITHOUT PREJUDICE**, reserving it the right to re-urge the same if, and when, the defendants notify the government of the comparative proportionality evidence they seek to introduce during the penalty phase.

**IT IS FURTHER ORDERED** that the defendants shall provide the government with a brief summary of the comparative proportionality evidence they seek to introduce, if any, by **AUGUST 31, 2020**.

**IT IS FURTHER ORDERED** that the government's motion to preclude evidence or argument concerning a mercy instruction and an instruction that death

41

is never required is **DISMISSED WITHOUT PREJUDICE**, reserving it the right to re-urge the same once the parties have submitted their proposed jury instructions.

     **IT IS FURTHER ORDERED** that the government's motion to preclude evidence or argument concerning prison conditions generally is **GRANTED** to the extent that such evidence may not be introduced in support of any mitigating factor.

     New Orleans, Louisiana, July 31, 2020.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**