**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.: 17-201** |
| **v.** | * | **SECTION: "I" (3)** |
| **LILBEAR GEORGE, et al.** | * | |

* * *

**GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT MOTION TO SUSPEND TRIAL, AND FOR OTHER RELIEF DUE TO THE IMPACT OF THE DEADLY COVID-19 PANDEMIC (DOC. 1200)**

**NOW INTO COURT**, through undersigned counsel, come the United States of America, who respectfully requests that the Court deny the defendants' motion to suspend trial and other relief. Doc. 1200.

The government agrees that a trial in January will place an undue burden on the defendants and their counsel as well as the government. However, the government does not agree that the trial should be suspended indefinitely. Alternatively, the government submits that resetting the trial date for the spring or summer of 2020 would be appropriate. Furthermore, the government submits that the defendants have not submitted any legal basis to strike the Notices of Intent to Seek the Death Penalty.

The government recognizes the inherent risk associated with trial during a pandemic. However, other jurisdictions have successfully completed jury trials during this time. In an online article published on August 27, 2020, *Federal Judges Reinventing the Jury Trial During Pandemic*[1], USCourts.gov notes that several federal judges such as Judge James Dever, III, of the Eastern District of North Carolina, Judge Karen Caldwell of the Eastern District of Kentucky, and

[1] https://www.uscourts.gov/news/2020/08/27/federal-judges-reinventing-jury-trial-during-pandemic

Chief Judge Barbara M.G. Lynn of the Northern District of Texas have all successfully conducted jury trials during the pandemic. In *United States v. Karen E. Matthews*, Judge Caldwell successfully conducted a jury trial lasting over seven weeks during the pandemic. *Id.* Judge Devers successfully conducted two jury trials in May, 2020. *Id.* The article further cites that if certain safety protocols are implemented, trials can be conducted safely and fairly to all parties involved.

Federal Judges also now have guidance from the Administrative Office of the United States Courts on how to conduct jury trials during the pandemic. *Conducting Jury Trials and Convening Grand Juries During the Pandemic*[2] is a published report from the COVID-19 Judicial Task Force that offers guidance during all phases of trial from wearing of protective gear by the parties, jury protection and selection, set-up of the courtroom, communication between defendants and counsel, presentation of evidence, witness testimony, spectator seating and remote viewing, deliberations and other considerations that may affect a trial. *Id.* This guidance shows that with careful planning and input from all parties, jury trials can be successfully held during a pandemic.

The defendants submit several reasons as to why they believe the trial should not go forward in January. While counsel may have legitimate concerns as to why the trial cannot take place in January, those concerns do not justify suspending the trial without date. The concerns raised can be addressed in order to prepare for trial. The government shares many of the same concerns, but believes that this case can be set for trial later in the year and that a reasonable delay would allow for the defendants and counsel to properly prepare for trial.

[2] https://www.uscourts.gov/sites/default/files/combined_jury_trial_post_covid_doc_6.10.20.pdf

Counsel for the government has not found any federal capital cases currently awaiting trial that have been suspended indefinitely without a trial date due to the pandemic nor do the defendants cite to any case that has received this extraordinary treatment.

This case was originally indicted in November of 2017. Counsel for the defendants have had over two years prior to the pandemic to meet with their clients, witnesses, and expert witnesses in preparation for the guilt and penalty phases of trial. Additionally, they have had the opportunity to witness the separate trial of the two co-defendants previously severed in this case that occurred in November of 2019. Therefore, they have seen most, if not all, of the government's evidence as to the guilt phase of this trial.

Defense counsel raises the issue that they must meet in person with the defendants to properly prepare for trial. Counsel has the ability to meet in person with their individual clients. The undersigned counsel for the government confirmed with each of the jails housing the defendants that counsel can meet in-person with their clients at the jails they are housed. St. Charles Parish's Nelson Coleman Correctional Center, where Curtis Johnson is held, allows for attorney-client in-person meetings with a glass partition from 8:00 a.m. to 4:00 p.m. St. Bernard Parish Prison, which houses Chukwudi Ofomata, allows for in-person attorney and client meetings from 8:30 a.m. to 3:30 p.m. These visits can be requested with or without a glass partition. St. Tammany Parish Prison does not have regularly scheduled hours for attorney-client visits. However, such meetings can be scheduled with the permission of the warden.[3] Therefore, the attorneys have the ability to meet privately with their clients, in-person, and with safeguards in-place for protection from the COVID-19 virus.

[3] According to officials at the jail, Mr. George has previously met in-person with attorneys in this case during the pandemic.

Additionally, as noted by the defendants' in their Joint Motion, this Court has offered continuously to have the defendants transported to the federal Courthouse in order to meet in-person with their counsel. Defendants' Joint Motion, Doc. 1200, p.16. Although there is law enforcement in the courtroom while the meetings take place, the conversations are not monitored, nor do any of the officers who may hear any of the conversations report any of the conversations to anyone, let alone the prosecutors in this case.

While the government recognizes the duty of defense counsel to meet in-person with their clients, it is not recognized as the only way for them to communicate. Defense counsel in this case have the ability to supplement in-person client meetings with video-conferencing, telephone, and written communications, all of which provide a secure and private way to communicate.

When all means of communication are taken together, all of which are available now to the defendants and counsel, the defendants and their counsel have more than adequate ability to effectively communicate in-person and by other means in preparation for trial and also to satisfy counsels' ethical and professional responsibilities.

Defense counsel cite that they have a conflict with effectively representing their clients and protecting their personal health. Although the government recognizes that there are certain risks associated with in-person meeting in preparation for trial, those risks can be minimized by following CDC guidelines and other recommendations from health care professionals. Those risks must also be weighed with the public's right to a fair, and timely administration of justice in accordance with the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(A). Additionally the Court must consider the rights of the victims in this case. 18 U.S.C. § 3771(a)(7). The family of Hector Trochez is entitled to proceedings free from unreasonable delay. *Id.* Suspending the trial without date would be an unreasonable delay and prejudicial to the Trochez family.

Defense counsel also have the opportunity to enter into meaningful plea discussions with the government. As noted above, counsel have the means to effectively communicate both in-person and by other means with their clients. Counsel for the government has continually expressed a willingness to meet with defense counsel and their clients to discuss a possible resolution to this case prior to trial. The pandemic has not changed the government's position as to plea negotiations. Although counsel cite possible difficulties in meeting with family members of their clients in order to pursue a plea, it is ultimately the defendants' decisions in this case and counsel does have the ability to effectively communicate with them. Furthermore, the defendants also have the ability to communicate with their family members if they choose to do so regarding a plea. The government is willing, and has done so in the past, to arrange in-person meetings with defendants, family members, and counsel in this case.

Counsel further submits that this trial should not take place in January due to the presidential election and the possible change in administration. The government submits that political considerations should never be taken into account in a judicial proceeding. The defendants and government are entitled to a proceeding free from any political influence. Should any law or government policy change in the future for political or any other reasons, then the defendants can pursue any relief to which they are entitled at that time. To delay a trial merely for the possibility of a change in the executive branch of the government is improper.

Counsel additionally argues that there will be difficulties in selecting a jury that is representational of the community. The government submits that such an argument is premature at this time. As noted by this Court in its ruling in *United States v. Jones*, 2006 WL 278248 (E.D. La. 2006), the defendants cannot state that the representation of African-American and other minority groups is not fair in relation to the number of such persons in the community. *Id*. Such

an argument cannot be made until the composition of the jury pool is known. Furthermore, the defense must show that "[t]here is systematic exclusion when the underrepresentation is due to the system of jury selection itself, rather than external forces." *Id*., citing *United States v. Rioux*, 97 F.3d 648, 658 (2d Cir. 1996). "To obtain relief under the Jury Act, a defendant must prove a 'substantial failure' to comply with the Act's provisions, a substantial failure being one that destroys the random nature or objectivity of the selection process." *United States v. Olaniyi-Oke*, 199 F.3d 767, 772 (5th Cir. 1999). The "happenstance" of a disproportionate jury venire is simply not enough to prevail under the Jury Act—not every venire will match the proportions of minorities in the community, given the nature of random selection and the size of the sample. *Id*. The defendants cannot prove a substantial failure to comply with the Act's provisions based upon speculative, premature arguments.

The Court draws upon prospective jurors from all thirteen parishes in the Eastern District of Louisiana, not just those from Orleans Parish. *Jones* at *2. Each of the thirteen parishes is proportionally represented in the master jury wheel. *Id*. Therefore, the Court should look to the representation of all of the parishes in the pool as to race, sex, age, and other factors, not just the representation from Orleans Parish.

The defendants further argue that wearing masks would cause undue bias and hardships during the trial. Requiring the defendants to wear a mask during the trial does not cause bias against the defendants, as everyone in the courtroom will be required to wear a mask. The defendants will not be singled-out. Given the prevalence of mask wearing today, the government submits that the defendants will suffer no prejudice for wearing a mask. Furthermore, if the defendants wish for their faces to be seen by the jury, they can opt to wear a clear shield during trial to cover their faces. Additionally, if the defendants opt to wear opaque masks, the masks

would only cover from the nose down and would not cause undue difficulty for the jurors to observe the defendants during the trial. Conversely, the defendants would also still be able to observe the jurors and their reactions even if the jurors were wearing masks from the nose down as well.

The court can also make adjustments from the mask requirements for witnesses when they are testifying. If the Court deemed it appropriate and safe, witnesses could be allowed to remove their masks while testifying with proper distancing and other safeguards in place. The Court could also provide clear face shields in lieu of masks for witnesses to wear while testifying. Both methods would allow all parties to clearly see the witness's face during testimony. The Court may also allow attorneys at the podium to remove their masks while questioning witnesses, again with proper distancing and other safeguards in place. This would allow for uninhibited questioning of witnesses.

As for spectators attending the trial, the courtroom can be open to the public based upon health and safety guidelines. Furthermore, the court can take steps such as video-conferencing the trial to an overflow courtroom should the trial courtroom fill to capacity. Seating may be limited in the trial courtroom but public attendance has always been limited to the capacity of the courtroom. The Court can also make arrangements to ensure that the defendants' families as well as the victim's family are represented in the trial courtroom by reserving seating in the trial courtroom.

The defendants additionally seek an order striking the government's Notices to Seek the Death Penalty. However, they cite no authority nor offer any argument as to why the Notices should be struck. Absent such argument or legal basis, the Notices should remain in place.

The government recognizes that this is a novel situation for all parties involved and also the difficulties in conducting a capital trial during the pandemic. However, it would be unfair to *all* parties involved to continue this trial without date in the hope of a future vaccination or medical treatment being developed. Such a suspension based upon a completely speculative future date would not serve the best interests of justice. Given the difficulties raised by the defense, the government submits that a trial in January would not serve the best interests of justice and therefore respectfully submits that the trial date be reset until the spring or summer of 2020. That would allow adequate time for defense counsel and the defendants to meet, confer, and prepare, both in-person and by other means, for the trial. The government faces the same hardships with its witnesses, both lay and expert, and believes that this will give adequate time for preparation. Should the circumstances of the pandemic require later evaluation of the trial date, the Court can certainly consider it at an appropriate time. However, justice will be best served by setting a trial date and all parties moving forward to try the case on that date.

**WHEREFORE,** the government respectfully requests the defendants' Joint Motion to Suspend the Trial and for Other Relief Due to the Impact of the Deadly COVID-19 Pandemic be **DENIED**.

Respectfully submitted,

PETER G. STRASSER
UNITED STATES ATTORNEY

*s/ Gregory M. Kennedy*
GREGORY M. KENNEDY
Assistant United States Attorney
Louisiana Bar Roll Number 20896
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3102
Email: Greg.Kennedy@usdoj.gov

*s/ Brittany L. Reed*
BRITTANY L. REED
Assistant United States Attorney
Louisiana Bar Roll Number 31299
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3031
Email: Brittany.Reed2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel for defendant.

*s/ Gregory M. Kennedy*
GREGORY M. KENNEDY
Assistant United States Attorney